Case No. 24-1098

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

DWAYNE B. SEALS,
*Plaintiff-Appellee,*

*v.*

WAYNE COUNTY, MICHIGAN,
*Defendant,*

and

WAYNE COUNTY, MICHIGAN EMPLOYEES' RETIREMENT SYSTEM,
*Defendant-Appellant.*

On appeal from a judgment entered after a jury trial conducted by the U.S. District Court, E.D. Michigan, before the Honorable Sean F. Cox, Case No. 2:20-cv-11272

---

### *CORRECTED* PRINCIPAL BRIEF OF DEFENDANT-APPELLANT

---

**THE MILLER LAW FIRM, P.C.**
Seth D. Gould (P45465)
Jacob M. Campbell (P83900)
950 W. University Dr., Ste. 300
Rochester, MI 48307
T: (248) 841-2200

**NACHTLAW, P.C.**
David A. Nacht (P47034)
501 Avis Dr., Ste. 3
Ann Arbor, MI 48108
T: (734) 663-7550
*Attorneys for Plaintiff-Appellee*

**VANOVERBEKE, MICHAUD & TIMMONY, P.C.**
Robert J. Abb (P76901)
79 Alfred St.
Detroit, MI 48201
T: (313) 578-1200
*Attorneys for Defendant-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellant, Wayne County, Michigan Employees' Retirement System ("WCERS") is exempt from providing a corporate disclosure statement because it is a governmental entity and "citizen" of Wayne County, Michigan. (Fed. R. App. P. 26.1 and 6 Cir. R. 26.1.)

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES........................................................................... iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT........................................ vii

STATEMENT OF JURISDICTION ...................................................................1

STATEMENT OF ISSUES ..............................................................................2

STATEMENT OF THE CASE...........................................................................3

SUMMARY OF THE ARGUMENT ...................................................................5

FACTUAL BACKGROUND ...........................................................................8

   WCERS.......................................................................................................8

   The 1,000-hour Rule ...................................................................................8

   Mr. Seals ..................................................................................................11

   2019 Job Change.......................................................................................13

   Wayne County Decides Mr. Seals' New Job is Not Exempt ...............................15

   Mr. Seals Made No Attempt to Mitigate the Pension Suspension.......................18

   No Retaliation by WCERS ..........................................................................19

   Mr. Seals Files Lawsuit..............................................................................19

   Defendants' Motions to Dismiss...................................................................19

   Defendants' Motions for Summary Judgment..................................................20

   WCERS' Motion for Reconsideration and the District Court's Denial of Same .22

   WCERS' Proposed Jury Instructions...............................................................23

   Mr. Seals' Motion in Limine Regarding "Law-of-the-Case" Doctrine (RE 111).23

   Mr. Seals' Motion in Limine to Preclude Pension Calculations (RE 86)...........24

   Trial........................................................................................................24

   Motion for Judgment as a Matter of Law/New Trial Denied ............................25

LEGAL ARGUMENT ....................................................................................26

   The Legal Framework for a First Amendment Retaliation Claim ......................26

   A.  The district court committed reversible error when it granted summary judgment *sua sponte* against WCERS on the first element of Mr. Seals' First Amendment retaliation claim, *i.e.,* protected speech............................................32

i.    Mr. Seals' criticisms were defamatory because they were false and he published them knowingly and recklessly. ........................................................37

ii.   Mr. Seals' criticisms were about a private, not public, concern. ...............38

iii.   The district court failed to conduct the *Pickering* balancing test. ..........39

B.   The district court committed reversible error when it entered summary judgment *sua sponte* against WCERS on the second element of Mr. Seals' retaliation claim, *i.e.,* adverse action. ...................................................................41

C.   The district court erred by not ruling as a matter of law that Mr. Seals' new job was subject to the 1,000-hour Rule...................................................................43

D.   The district court erred with its jury instructions and related rulings (RE 124; 127). ........................................................................................................................48

E.   The district court erred when it dismissed Wayne County as a defendant....54

CONCLUSION ...................................................................................................................56

CERTIFICATE OF COMPLIANCE ...........................................................................57

ADDENDUM .....................................................................................................................59

# TABLE OF AUTHORITIES

## Cases

*Advanced Concrete Tools, Inc. v. Beach*, 525 Fed. Appx. 317 (6th Cir. 2013) ......35

*Arnett v. Kennedy,* 416 U.S. 134 (1974) ...............................................................28

*Atkins v. Mercer*, 2024 WL 1997136 (W.D. Mich. 2024).....................................26

*Barnes v. McDowell*, 848 F.2d 725 (6th Cir. 1988) ..............................................28

*Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997).............................................27

*Beaty v. United States*, 937 F.2d 288 (6th Cir. 1991)............................................32

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002)......................................................30

*Bennett v. City of Eastpointe*, 410 F.3d 810 (6th Cir. 2005) .................................34

*Bonnell v. Lorenzo,* 241 F.3d 800 (6th Cir. 2001) .................................................27

*Boyd v. Civil Service Com'n*, 559 N.W.2d 342 (Mich. Ct. App. 1996)..................43

*Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891 (6th Cir. 2001)..........42

*Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009)..................................................34

*Brookins v. Kolb*, 990 F.2d 308 (7th Cir. 1993) ...................................................42

*C.I.R. v. Clark*, 489 U.S. 726 (1989) ...................................................................47

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .....................................................33

*Connick v. Myers*, 461 U.S. 138 (1983)....................................................... *in passim*

*Dearborn Fire Fighters Union v. City of Dearborn*, 394 Mich. 229 (Mich. 1975) 44

*Dye v. Office of the Racing Com'n*, 702 F.3d 286 (6th Cir. 2012) .................. 40, 41

*Excel Energy v. Cannelton Sales*, 246 Fed. Appx. 953 (6th Cir. 2007) ..... 32, 33, 35

*Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004) ......................................................27

*Fritz v. Charter Tp. of Comstock*, 592 F.3d 718 (6th Cir. 2010)..................... 27, 41

*Fryman v. Federal Crop Ins. Corp.*, 936 F.2d 244 (6th Cir. 1991).........................54

*Garcetti v. Ceballos,* 547 U.S. 410 (2006) ................................................ 27, 29, 30

*Gawlik v. Strom*, 2023 WL 5979992 (D. Conn. 2023)...........................................42

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)...............................................3, 26

*Giacopelli v. Inc. Vill. of Malverne*, 829 F. Supp. 2d 131 (E.D. N.Y. 2011)..........42

*Handi Inv. Co. v. Mobil Oil Corp.*, 653 F.2d 391 (9th Cir. 1981).........................37

*Hartman v. Moore*, 547 U.S. 250 (2006) ..............................................................48

*Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010) ........................................................39

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985) ......................................................55

*Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253 (2022) ........................... 48, 49

*In re Grant*, 250 Mich. App. 13 (2002)................................................................48

*In re Kurzyniec Estate,* 207 Mich. App. 531 (Mich. Ct. App. 1994) .....................48

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) ............................. 31, 50

*Jackson v. Leighton*, 168 F.3d 903 (6th Cir. 1999) ...............................................28

*Kindle v. City of Jeffersontown, Ky*, 589 Fed. Appx. 747 (6th Cir. 2014)..............37

*King v. Zamiara*, 680 F.3d 686 (6th Cir. 2012)........................................ 26, 31, 32

*Kotmar v. Liquor Control Comm.*, 207 Mich. App. 687 (Mich. Ct. App. 1994) ....43

*Lemaster v. Lawrence Cnty., Ky*, 65 F.4th 302 (6th Cir. 2023)................................50

*Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999) ..................................31

*Mayhew v. Town of Smyrna*, 856 F.3d 456 (6th Cir. 2017)......................................29

*MERC v. Detroit Symphony Orchestra*, 393 Mich. 116 (Mich. 1974)...................48

*Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir. 1993) ...................................54

*Meyers v. City of Cincinnati*, 934 F.2d 726 (6th Cir. 1991)....................................40

*Mt. Healthy v. Doyle*, 429 U.S. 274 (1977)..............................................................49

*Nieves v. Bartlett*, 126 S. Ct. 1715 (2019) ..................................................*in passim*

*Olmstead v. L. C.,* 527 U.S. 581 (1999)....................................................................50

*Paterek v. Vill of Armada, Michigan*, 801 F.3d 630 (6th Cir. 2015) ......................50

*People v. Bruce*, 504 Mich. 555 (Mich. 2019)........................................................44

*People v. Freedland*, 308 Mich. 449 (Mich. 1944).....................................*in passim*

*Pickering v. Bd. Of Educ.,* 391 U.S. 563 (1968).........................................*in passim*

*Raven v. Board of Com'rs of Wayne County*, 399 Mich. 585 (Mich. 1977)...........46

*Richards v. Perttu*, F.4th 911 (6th Cir. 2024)...........................................................32

*Rideout v. Shelby Twp.*, 2023 WL 5917392 (E.D. Mich. 2023)..............................49

*Rieck v. Hous Auth. Of Covington*, 2024 WL 556221 (6th Cir. 2024)....................31

*Rodgers v. Banks*, 344 F.3d 587 (6th Cir. 2003) ..............................................28, 29

*Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711 (6th Cir. 2002) .............................37

*Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926 (6th Cir. 2000)...........................................................32

*Smith v. Campbell*, 250 F.3d 1032 (6th Cir. 2001)..................................................49

*Smith v. Perkins Bd. of Educ.*, 708 F.3d 821 (6th Cir. 2013) ..................................35

*Somberg v. Utica Cmty. Schs.*, 908 F.3d 162 (6th Cir. 2018)....................................7

*Taylor v. Keith,* 338 F.3d 639 (6th Cir. 2003) .........................................................29

*Thadeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)..................................26, 30, 49

*Turcar LLC v. I.R.S.*, 451 Fed. Appx. 509 (6th Cir. 2011).....................................33

*Turner v. Safley,* 482 U.S. 78 (1987) ..................................................................26, 41

*United States v. Turns*, 198 F.3d 584 (6th Cir. 2000)..............................................32

*Universities Research Assn., Inc. v. Coutu*, 450 U.S. 754 (1981)...........................47

*Waters v. Churchill*, 511 U.S. 661 (1994) .....................................................27, 28, 40

*Westmoreland v. Sutherland*, 662 F.3d 714 (6th Cir. 2011)..............................3, 26

*Yashon v. Gregory*, 737 F.2d 547 (6th Cir. 1984) ...................................................33

*Young v. Ream*, 2020 WL 7701021 (E.D. Mich. 2020) ..........................................42

## Statutes

28 U.S.C. § 1291.........................................................................................................1

28 U.S.C. § 1331.........................................................................................................1

28 U.S.C. § 1343(a)(3)................................................................................................1

28 U.S.C. § 1983 ....................................................................................1

42 U.S.C. § 1983 ................................................................................. vi

MCL § 46.12(a)(28) ........................................................................8, 10

MCL § 46.12a ........................................................................................7

MCL § 46.12a(28)(a) ........................................................................4, 6

MCL § 50.63 ........................................................................................46

MCL § 24.306 ......................................................................................43

## Rules

Fed. R. App. P. 28(a)(4)(C) ..................................................................1

Fed. R. App. P. 28(a)(4)(D) ..................................................................1

Fed. R. App. P. 3(a)(1) ..........................................................................1

Fed. R. App. P. 4(a)(4)(A) .....................................................................1

Fed. R. Civ. P. 12(b)(6) ................................................................. 21, 34

Fed. R. Civ. P. 12(c) ............................................................................34

Fed. R. Civ. P. 50 ................................................................................25

Fed. R. Civ. P. 56 .................................................................. 5, 33, 36

Fed. R. Civ. P. 56(f) ....................................................................vii, 34

MCR 3.302(C) ....................................................................................43

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

WCERS hereby requests oral argument because this appeal raises important issues relating to First Amendment retaliation claims brought pursuant to 42 U.S.C. § 1983, including whether defamatory speech is eligible for protection and application of the balancing test required by *Pickering v. Bd. Of Educ.,* 391 U.S. 563 (1968). The appeal also raises important issues regarding the district court's improper granting of summary judgment *sua sponte* against WCERS and in favor of the non-movant Plaintiff-Appellee, Dwyane B. Seals ("Mr. Seals"), while wrongly construing all facts in the non-movant's favor and without affording WCERS advance notice and an opportunity to respond – a direct violation of Fed. R. Civ. P. 56(f).

## STATEMENT OF JURISDICTION

The district court maintained subject-matter jurisdiction over the litigation pursuant to 28 U.S.C. § 1331 by way of a federal question (*i.e.*, a First Amendment retaliation claim advanced pursuant to 28 U.S.C. § 1983), and 28 U.S.C. § 1343(a)(3)-(4) (*i.e.*, jurisdiction over civil rights claims).

This Court maintains jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and Fed. R. App. P. 3(a)(1) because this appeal is taken from a judgment following a jury trial, in addition to challenging some of the district court's rulings and orders.

Pursuant to Fed. R. App. P. 28(a)(4)(C), WCERS filed its notice of appeal on February 6, 2024, and within 30 days after the district court denied its motion for judgment as a matter of law or, alternatively, for a new trial. Fed. R. App. P. 4(a)(4)(A) and RE 143 (order dated January 8, 2024). Pursuant to Fed. R. App. P. 28(a)(4)(D), this appeal follows a final order or judgment that disposes of all parties' claims.

## STATEMENT OF ISSUES

1.    Whether the district court committed reversible legal error when it granted summary judgment *sua sponte* in favor of non-movant Mr. Seals on the first element of his First Amendment retaliation claim – protected speech – when the district court did not give advance notice to WCERS or an opportunity to be heard and construed all evidence against WCERS.

2.    Whether the district court committed reversible legal error when it granted summary judgment *sua sponte* in favor of non-movant Mr. Seals on the second element of his First Amendment retaliation claim – adverse action – when the district court did not give advance notice to WCERS or an opportunity to be heard and construed all evidence against WCERS.

3.    Whether the district court's jury instructions were contrary to applicable law.

4.    Whether the district court erred by ignoring and/or criticizing without showing any deference to the quasi-judicial decisions made by Wayne County and WCERS and by never making its own ruling – based on the whole record – answering whether Mr. Seals' new, "quasi-deputy", position was exempt from the "1,000-hour Rule."

5.    Whether the district court's summary judgment dismissal of Wayne County was contrary to applicable law.

## STATEMENT OF THE CASE

Mr. Seals, a reemployed Wayne County retiree, filed this First Amendment retaliation lawsuit against his employer Wayne County, WCERS, and WCERS's Executive Director, Mr. Robert Grden ("Mr. Grden"). (Complaint, RE 1) WCERS is a public-employee pension plan and trust which provides retirement benefits for eligible Wayne County and Wayne County Airport Authority employees, retirees, and their beneficiaries. (Stipulations, RE 127, PageID.3720-21) Wayne County and WCERS are separate legal entities. (*Id.*)

In emails and during WCERS's public meetings, Mr. Seals made defamatory statements that Wayne County and WCERS were cheating him and other retirees out of pension benefits. (*See*, *e.g.*, Emails, RE 13-2, PageID.466-67; Trial Transcript (Seals), RE 159, PageID.4830-31; Trial Transcript (Seals), RE 160, PageID.4850-51, PageID.4884-85) Mr. Seals' statements were false, and he made them repeatedly and "intentional[ly] or [with] reckless disregard of their truth." *Westmoreland v. Sutherland*, 662 F.3d 714, 722 (6th Cir. 2011). On multiple occasions, WCERS explained to Mr. Seals why his criticisms were false, but he persisted repeating them to anyone who would listen. (*See*, *e.g.*, Trial Transcript (Grden), RE 132, PageID.4115, 4122-23, 4125-26; Trial Transcript (Seals), RE 160, PageID.4882-83) Mr. Seals' false statements deserved no protection under the First Amendment. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-340 (1974). At trial, Mr. Seals did

not dispute that WCERS paid him what he was owed. (Trial Transcript (Grden), RE 132, PageID.4115, 4122-23, 4125-26; Trial Transcript (Seals), RE 160, PageID.4882-83)

Moreover, the alleged adverse action taken by Wayne County and WCERS – to suspend Mr. Seals' pension benefits – was required by law and was not discretionary.  MCL § 46.12a(28)(a).

WCERS requests reversal of the judgment because the district court committed legal error when it: (i) denied WCERS's motion for summary judgment and granted summary judgment *sua sponte* in favor of the non-movant Mr. Seals (Opinion and Order, RE 64); (ii) granted Wayne County's motion for summary judgment (*Id.*); (iii) denied WCERS' motion for reconsideration (Opinion and Order, RE 70); (iv) granted Mr. Seals' motion in limine (Opinion and Order, RE 111); (v) denied WCERS' objections to the jury instructions (Order, RE 116); (vi) issued its jury instructions opinion (Opinion, RE 124); (vii) entered the judgment (Judgment, RE 128); and (viii) denied WCERS's motion for judgment as a matter of law/new trial (Opinion and Order, RE 143).

## SUMMARY OF THE ARGUMENT

First, the district court erred by granting summary judgment *sua sponte* in favor of Mr. Seals on the first two elements of Mr. Seals' retaliation claim – protected speech and adverse action – when Mr. Seals had not requested such relief, and material disputes of fact and law existed at the summary judgment stage on those two elements, and the district court construed all evidence in Mr. Seals' favor. Opinion and Order, RE 64. In contradiction of Fed. R. Civ. P. 56, the district court made improper findings of fact and granted relief against WCERS without advance notice to WCERS or an opportunity to respond before the district court's ruling.

As for protected speech, the district court also committed legal error when it found in favor of Mr. Seals without any analysis regarding whether Mr. Seals' statements were false and/or that he published them to third parties knowingly and recklessly. Moreover, Mr. Seals' speech concerned a private, not public, matter; namely, a complaint about the calculation of his pension benefits that he had been making since at least 2016.

The district court also failed to conduct the balancing test required by *Pickering*, which protects WCERS from liability because it paid Mr. Seals what he was owed under Michigan law, balanced against Mr. Seals' defamatory statements and improper attempts to obtain pension funds contrary to Michigan law.

Finally, the district court's premature ruling on Mr. Seals' speech was also directly contrary to the Supreme Court's mandate to determine if such speech is protected based on "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 142 (1983). Accordingly, the district court and/or jury should have only made a determination on whether Mr. Seals' speech was protected at the conclusion of the trial based on ***all*** evidence presented in support of and in defense of Mr. Seals' retaliation claim.

All of these issues demonstrate that Mr. Seals should not have prevailed on the first element of his first amendment retaliation claim before trial.

The district court similarly committed reversible legal error when it granted summary judgment in favor of Mr. Seals *sua sponte* on the second element – adverse action. At the direction of Wayne County, WCERS properly suspended Mr. Seals' pension benefits because he worked more than 1,000 hours in a job that was not exempt under the "1,000-hour Rule". *See* MCL § 46.12a(28)(a) and Wayne County Retirement Ordinance (*i.e.*, Sec. 141-1, *et seq*.). The 1,000-hour Rule protects the solvency of pension trusts including Wayne County's pension trust by preventing "double-dipping" by retirees who return to work and simultaneously collect a full-time salary ***and*** pension benefits. Wayne County and WCERS routinely suspend pension benefits for reemployed retirees who work more than 1,000 hours in a year. Mr. Seals was wrongly seeking illegal special treatment. The district court

summarily issued a ruling contrary to Michigan Supreme Court authority and without affording "substantial evidence" deference to the independent quasi-judicial decisions made by Wayne County and WCERS to suspend Mr. Seals' pension benefits, in violation of MCL § 46.12a, *Somberg v. Utica Cmty. Schs.*, 908 F.3d 162 (6th Cir. 2018), and related legal authority.

The district court then, wrongly, "doubled down" at trial by instructing the jury that it had already found against WCERS on the first two elements of Mr. Seals' claim, and the jury only had to decide causation and damages. Compounding this error, over WCERS's objections, the district court instructed the jury that causation could be found using a highly prejudicial "but-for" (*i.e.*, strict-liability) jury instruction which is contrary to Supreme Court and Sixth Circuit precedent, and which required no showing of an improper, retaliatory intent by WCERS. The district court also erred by excluding WCERS's proposed jury instructions on mitigation of damages despite WCERS presenting evidence at trial that Mr. Seals failed to mitigate his damages.

Finally, the district court erred when it dismissed Wayne County from the case at the summary judgment stage on causation grounds because it was undisputed that Wayne County, in the first instance, decided to suspend Mr. Seals' pension benefits and WCERS merely implemented that decision after a second legal opinion similarly confirmed Mr. Seals' new job was not exempt.

## FACTUAL BACKGROUND

### **WCERS**

WCERS is administered by an 8-member Wayne County Employee Retirement Commission ("Commission"), which operates pursuant to Section 141-35 of the Wayne County Retirement Ordinance. (Trial Brief, RE 80, PageID.3009; Trial Transcript (Stipulations), RE 160, PageID.4961; Jury Instructions (Stipulations), RE 127, PageID.3722) The Commission is a quasi-judicial body which is vested with the authority and fiduciary responsibility for the administration and operation of WCERS and for managing around $1.5 billion in investments related to Wayne County's defined benefit plan, defined contribution plan, Deferred Compensation 457(b) plan, and 3121 FICA alternative plan. (*Id*.; Trial Transcript (Macdonald) RE 161, PageID.5020) The Commission may not change the terms of the active or retired members' benefits. (*Id*.) Instead, as a fiduciary, it only has the authority to grant benefits authorized under laws, ordinances, and Wayne County policy. (*Id*.)

### **The 1,000-hour Rule**

MCL § 46.12(a)(28) requires Wayne County to administer the "1,000-hour Rule" which prohibits retirees returning to work from simultaneously collecting salaries and pension benefits if they work more than 1,000 hours in a 12-month period. (Trial Brief, RE 80, PageID.3003-04) Consequently, Wayne County

maintains a policy called the "Retirants Return to Wayne County Employment." (*Id.*, at PageID.3004; Wayne County Policy, RE 80-1) Wayne County makes the initial suspension decision required by this rule because, unlike WCERS, it knows its employees, their assigned responsibilities, and hours worked. (Trial Transcript (Macdonald), RE 161, PageID.5022-23) Once the reemployed "retiree" works more than 1,000 hours in a 12-month period (*i.e.,* works full-time), Wayne County then instructs WCERS to suspend pension benefits because WCERS is the only entity able to actually suspend an employee's pension benefits. (*Id.*; Wayne County Policy, RE 80-1)

The 1,000-hr Rule is a state law that applies to ***every county*** in Michigan and serves an important purpose – ensuring county pension plans remain solvent. (Trial Brief, RE 80, PageID.3004) Retirees do not contribute any portion of their post-retirement salaries to the pension plans. Conversely, pre-retirement employees actively fund such plans. (*Id.*) Pension plans like Wayne County's pension are reliant upon contributions from active members when they have more retirees drawing a pension than employees contributing to the pension fund. (*Id.*, PageID.3004-05) Accordingly, Wayne County's 1,000-hour Rule policy provides: "Retirants should be re-employed only when economically prudent and for a short duration, and retirants under contract with the County shall not be paid more than 70% of their

annual rate at the time of retirement." (Wayne County Policy, RE 80-1, PageID.3029)

Narrow exceptions to the 1,000-hour Rule exist, including one exemption for retirees that return to work as "appointed public officials." MCL § 46.12(a)(28). Michigan allows this special class of individuals to simultaneously collect both salary and pension benefits while working full time. However, to qualify for this "public-official" exemption, the job must satisfy ***all of*** the following five factors: (1) It must be created by the Constitution or by the Legislature or created by a municipality or other body through authority conferred by the Legislature; (2) It must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) The powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority; (4) The duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; ***and*** (5) It must have some permanency and continuity, and not be only temporary or occasional. Wayne County Policy, RE 80-1, PageID.3029 (emphasis added); *People v. Freedland*, 308 Mich. 449 (1944).

-10-

The vast majority of reemployed retirees (*i.e.,* 99%) are non-exempt and follow the 1,000-hour Rule. (Trial Brief, RE 80, PageID.3004; Trial Transcript (Yee), RE 159, PageID.4739-40).

## Mr. Seals

Mr. Seals started working for Wayne County in 2006. (Jury Instructions (Stipulations), RE 127, PageID.3720) Mr. Seals is a participant in the defined benefit plan known as the Legislative Executive Plan. (Trial Transcript (Grden), RE 132, PageID.4109, 4115) Before Mr. Seals retired at age 49, he requested and WCERS provided him with a monthly estimate of his pension benefits. (Affidavit, RE 52-2, PageID.1085; Trial Transcript (Seals), RE 130, PageID.3890; Trial Transcript (Grden), RE 132, PageID.4113-15) WCERS advised Mr. Seals the estimate was just that – an estimate – because final adjustments are necessary for sick leave, annual leave, and AFC are reviewed and adjusted after separation. (Emails, RE 52-2, PageID.1162; Deposition Transcript (Grden), RE 52-5, PageID.2041; Deposition Transcript (Seals), RE 52-3, PageID.1211, 1221-1222; Trial Transcript (Grden), ECF 132, PageID.4114) In November 2016, Mr. Seals retired from Wayne County and began collecting monthly pension benefits. (Jury Instructions (Stipulations), RE 127, PageID.3720)

In January 2017, the Wayne County Register of Deeds, Mr. Bernard Youngblood, reemployed Mr. Seals as a Deputy Register of Deeds/Chief Financial

Officer. (Trial Brief, RE 80, PageID.3011; Jury Instructions (Stipulations), RE 127, PageID.3720) At the time of his rehire, Mr. Seals signed a form agreeing to follow the 1,000-hour Rule. (Trial Transcript (Seals), RE 160, PageID.4862-63) On September 22, 2017, Wayne County determined that Mr. Seals' position was exempt under the 1,000-hour Rule because it qualified for the "public-official" exemption. (Trial Brief, RE 80, PageID.3011; Trial Transcript (Van de Grift), RE 160, PageID.4921-29) Mr. Seals' Deputy Register of Deeds/Chief Financial Officer job position had been around for thirty years. (Trial Transcript (Van de Grift), RE 160, PageID.4905)

In November of 2016, Mr. Seals demanded an explanation from Wayne County and WCERS why his monthly pension benefit was $38 less/month than what WCERS had stated in its earlier estimate. (Trial Transcript (Seals), RE 130, PageID.3897; Emails, RE 52-2, PageID.1157) Mr. Seals requested an appeal but did not appear at the scheduled appeal. (Meeting Minutes, RE 52-2, PageID.1072; Affidavit, at *id*., PageID.1087; Trial Transcript (Grden), RE 132, PageID.4115) At the January 30, 2017 WCERS regular meeting, WCERS considered and denied Mr. Seals' appeal. (*Id*.; Trial Transcript (Grden), RE 132, PageID.4115; Meeting Minutes, RE 52-2, PageID.1109-10)

Mr. Seals' complaints were numerous and incorrect, and WCERS repeatedly rebutted his complaints. For example, around March 2017, Mr. Seals had

complained he was entitled to an "AFC" (Average Final Calculation) using an (incorrect) 4-year calculation instead of 5-years. (Trial Transcript (Grden), RE 132, PageID.4113-14)

Mr. Seals' boss at the time, Mr. Youngblood, became upset with Mr. Seals because he was spending too much time on this personal pension dispute and was not completing work assignments and missing important work deadlines which damaged the reputation of the Register of Deeds. (Trial Transcript (Grden), RE 161, PageID.5059-60; Deposition Transcript (Seals), RE 52-3, PageID.1417-18) After his appeal was denied, Mr. Seals spoke with "black retirees" about being "cheated out of their pension." (Deposition Transcript (Seals), RE 52-3, PageID.1554)

## 2019 Job Change

In May 2019, Mr. Seals resigned from the Register of Deeds. (Jury Instructions (Stipulations), RE 127, PageID.3721) Wayne County Clerk, Ms. Cathy Garrett, created a new job position for Mr. Seals titled "Deputy County Clerk/Financial Officer" which Ms. Garrett admitted was her first "quasi-deputy" position. (Wayne County P/HR Requisition Form, RE 52-2, PageID.1028-38; Jury Instructions (Stipulations), RE 127, PageID.3721; Trial Transcript (Garrett), RE 159, PageID.4817) The job responsibilities for this new position were identical to those previously performed by Mr. John Ude, who held a non-appointed civil-servant

-13-

position called Financial Administrator. (Trial Transcript (Garrett), RE 159, PageID.4816; Trial Transcript (Van de Grift), RE 160, PageID.4939-40)

In July 2019, Mr. Seals resumed criticizing WCERS for its calculation of his pension – advancing the same arguments he had made in 2017. (Trial Transcript (Seals), RE 159, PageID.4829; Trial Transcript (Grden), RE 161, PageID.5064) WCERS agreed to conduct another review/internal audit of Mr. Seals' pension calculations. (Trial Transcript (Grden), RE 161, PageID.5064-66) WCERS asked Ms. Tina Turner, an accountant who had recently joined the retirement department and was not involved in the original calculations, to independently calculate Mr. Seals' pension benefits. (Trial Transcript (Grden), RE 161, PageID.5064-66) At WCERS's September 30, 2019 meeting, Ms. Turner reported her pension calculations which were identical to the pension benefits WCERS had previously calculated and paid to Mr. Seals. (Trial Transcript (Yee), RE 159, PageID.4752; Trial Transcript (Macdonald), RE 161, PageID.5042-45) WCERS concluded, once again, that it had properly calculated Mr. Seals' pension benefits and WCERS would not pay Mr. Seals an extra $38 more per month simply because he was making that demand. (Trial Transcript (Grden), RE 161, PageID.5068-69) WCERS performs benefits calculations consistent with the calculations employed by the Actuary. (Trial Transcript (Grden), RE 132, PageID.4124, 4139) Additionally, WCERS engages

-14-

external audits annually to confirm pension benefits are correctly calculated. (Meeting Minutes, ECF 52-2, PageID.1056-57)

At this September 30, 2019 meeting, WCERS learned for the first time that Mr. Seals had changed jobs. (Trial Transcript (Macdonald), RE 161, PageID.5024-25; Trial Transcript (McDonald), RE 160, PageID.4983; Trial Transcript (Grden), RE 161, PageID.5072; Trial Transcript (Van de Grift), RE 160, PageID.4938-39; Trial Transcript (Yee), RE 159, PageID.4764-65) WCERS learned about Mr. Seals' job change not from Wayne County Personnel and Human Relations (P/HR) in accordance with its 1,000-hour Rule, but rather from one of WCERS's Commission members, Mr. Tom Yee, who worked directly for Mr. Seals in the County Clerk's office. (*Id*.) Upon learning about Mr. Seals' recent job change, Commissioner Mr. Hugh Macdonald asked Wayne County Corporation Counsel, Mr. Drew Van de Grift (in attendance at the September 30, 2019 meeting), if Wayne County had determined if Mr. Seals' new job was subject to or exempt from the 1,000-hour rule. (Trial Transcript (Macdonald), RE 161, PageID.5024-25)

## **Wayne County Decides Mr. Seals' New Job is Not Exempt**

In October/November 2019, consistent with its policy, Wayne County Corporation Counsel independently investigated Mr. Seals' new job at the Clerk's office and learned that Mr. Seals' new job was ***identical*** to a job previously performed by a non-appointed civil servant. (Trial Transcript (Van de Grift), RE 160,

PageID.4939-41) Corporation Counsel analyzed the five-factor test required by Wayne County's 1,000-hour Rule (as established by the *Freedland* case) and concluded Mr. Seals' new position was ***not*** exempt. (Trial Transcript (Grden), RE 161, PageID.5073-74; Trial Transcript (McDonald), RE 160, PageID.4985-86) Crucially, Wayne County found the position lacked permanency as it was created specifically for Mr. Seals. (Trial Transcript (Van de Grift), RE 160, PageID.4924-25; Trial Transcript (Van de Grift), RE 160, PageID.4941) WCERS was not involved in Wayne County's determination. (Trial Transcript (Van de Grift), RE 160, PageID.4932)

On January 17, 2020, Wayne County (Director of Wayne County P/HR, Mr. Steve Mahlin) advised Mr. Seals that his new job position was ***not*** exempt under the 1,000-hour Rule. (Trial Transcript (Yee), RE 159, PageID.4784-85; Trial Transcript (Seals), RE 160, PageID.4852-53) On January 29, 2020 and February 12, 2020, Wayne County advised Mr. Seals that his working hours were approaching the 1,000-hour limit. (Trial Transcript (Stipulations), RE 160, PageID.4961-62) Mr. Seals, nevertheless, elected to work more than 1,000 hours. (Trial Transcript (Stipulations), RE 160, PageID.4960-61)

At its February 24, 2020 board meeting, WCERS received a legal analysis performed by its outside legal counsel which independently concluded Mr. Seals' new job was ***not*** exempt from the 1,000-hr Rule. (Trial Transcript (Stipulations), RE

-16-

160, PageID.4960-61; Trial Transcript (Grden), RE 161, PageID.5075-76) At this juncture, because of the independent decisions by Wayne County and WCERS, and because Mr. Seals had worked more than 1,000 hours in a 12-month period, WCERS suspended Mr. Seals' pension benefits in accordance with state law and Wayne County policy. (*Id.*; Trial Transcript (Seals), RE 160, PageID.4867) The legal opinions from Wayne County Corporation Counsel and WCERS's outside legal counsel both independently concluded that Mr. Seals' new job was not exempt and, therefore, WCERS had no discretion and was required, by law, to suspend Mr. Seals pension when he worked more than 1,000 hours. (Trial Transcript (Van de Grift), RE 160, PageID.4931-32; Trial Transcript (Macdonald), RE 160, PageID.4986-87) On February 27, 2020, WCERS sent Mr. Seals a letter detailing the legal basis for suspending his pension benefits and notified him of his appellate rights. (Meeting Minutes, RE 52-2, PageID.1072)

On April 27, 2020, Mr. Seals appealed this decision by Wayne County and WCERS. (Meeting Minutes, RE 52-2, PageID.1068) At WCERS's May 29, 2020 Regular Meeting, WCERS denied Mr. Seals' appeal. (Meeting Minutes, RE 52-2, PageID.1067-74) WCERS's witnesses all testified at trial that they would have voted the same way even had Mr. Seals not criticized WCERS because they had no discretion or choice but to follow the advice of legal counsel. (Trial Transcript

-17-

(McDonald), RE 161, PageID.5000; Trial Transcript (Macdonald), RE 161, PageID.5030)

**Mr. Seals Made No Attempt to Mitigate the Pension Suspension**

WCERS tried to help Mr. Seals avoid the pension suspension by advising that he become a contract consultant rather than remain an employee or request a job change to Chief Deputy Clerk. (Trial Transcript (Grden), RE 161, PageID.5081-82) Mr. Seals, however, elected not to take any of these actions.

Two years later, on November 1, 2022, the County Clerk promoted Mr. Seals to Chief Deputy County Clerk, eliminated his former position entirely and allocated the salary to a non-appointed administrative assistant position. (Emails, RE 66-2, PageID.2730-31; Mtn. for Reconsideration, RE 66, PageID.2694-95) This means that his prior position only existed for roughly 3 years – it was created especially for Mr. Seals and the position was eliminated once he moved to another position. (*Id.*)

On November 28, 2022, Wayne County (P/HR) determined Mr. Seals' new position "Chief Deputy County Clerk," was exempt from the 1,000-hr Rule. (Trial Transcript (Grden), RE 161, PageID.5083; Trial Transcript (Van de Grift), RE 160, PageID.4949-51) WCERS restarted Mr. Seals' pension payments effective December 1, 2022, and Mr. Seals continues to receive pension benefits to this day while working more than 1,000 hours/year. (*Id.*)

-18-

**No Retaliation by WCERS**

After suspension of his pension benefits, Mr. Seals publicly admitted that WCERS was ***not*** out to get him. (Trial Transcript (Seals), RE 131, PageID.3960-61) This adverse admission was confirmed by several WCERS witnesses. (Trial Transcript (Van de Grift), RE 131, PageID.4015; Trial Transcript (Grden), RE 132, PageID.4137)

**Mr. Seals Files Lawsuit**

Mr. Seals filed this lawsuit on April 17, 2020 against Wayne County, WCERS and WCERS's executive director, Mr. Grden. Mr. Seals alleged Wayne County, WCERS, and Mr. Grden engaged in a conspiracy to cover up their purported cheating of pensioners by convincing Wayne County to draft a bogus legal opinion justifying suspension of his pension benefits. (Complaint, RE 1, PageID.9)

**Defendants' Motions to Dismiss**

On July 31, 2020, Wayne County, WCERS and Mr. Grden filed motions to dismiss which argued, *inter alia,* that Mr. Seals had not adequately pled his First Amendment retaliation claim because his statements were defamatory, concerned a personal, not public, matter and there was no retaliation or causation because defendants paid Mr. Seals what he was owed under Michigan law when they suspended Mr. Seals' pension benefits. (Mtn. to Dismiss, RE 12; Motion to Dismiss, RE 13)

Accepting all well pled factual allegations in Mr. Seals' favor, the district court denied both motions. (Opinion and Order, RE 22) The district court concluded Mr. Seals had sufficiently pled his speech was protected speech. (*Id.*) The district court assumed Mr. Seals' criticisms were truthful – that WCERS was cheating Mr. Seals and other retirees. (*Id.*) The district court did not perform the *Pickering* balancing test. (*Id.*) The district court also concluded Defendants' decisions to suspend Mr. Seals' pension benefits constituted adverse action under the First Amendment. (*Id.*) Finally, the district court concluded Mr. Seals had pled a *prima facie* case of causation. (*Id.*)

**Defendants' Motions for Summary Judgment**

At the conclusion of discovery, Defendants moved for summary judgment. (Mtn. for Summary Judgment, RE 52; Motion for Summary Judgment, RE 54) Mr. Seals did not request summary judgment. Defendants' motions presented legal argument and evidence that Mr. Seals' criticisms were not protected speech because they were defamatory statements and did not involve a matter of public concern. (*Id.*) Defendants argued the *Pickering* balancing test immunized Defendants from liability because they were paying Mr. Seals what Michigan law required, which outweighed Mr. Seals' defamatory claims otherwise. (*Id.*) Defendants also presented argument and evidence that there was no adverse action because Wayne County and WCERS correctly suspended Mr. Seals' pension when he elected to work more than

1,000 hours. (*Id.*) Moreover, there was no causation involving retaliatory animus because Mr. Seals admitted defendants were ***not*** out to get him. (Trial Transcript (Seals), RE 160, PageID.4895-97; Trial Transcript (Van de Grift), RE 131, PageID.4015; Trial Transcript (Grden), RE 132, PageID.4137)

Mr. Seals' opposition brief argued his retaliation claim was viable even if his criticisms were false and there was no need to prove a conspiracy between Wayne County and WCERS because circumstantial evidence is adequate proof of conspiracy. (Response to Mtn. for Summary Judgment, RE 58)

Before the district court's decision on these motions, Mr. Seals voluntarily dismissed Mr. Grden as a defendant. (Stipulated Order, RE 59)

On November 10, 2022, the district court issued its summary judgment order. (Opinion and Order, RE 64) The district court's order improperly incorporated prior "findings" from its order denying Defendants' motions to dismiss (filed pursuant to Fed. R. Civ. P. 12(b)(6)) and ignored disputed material issues of fact. (*Id.*, PageID.2664) The district court *sua sponte* granted summary judgment in Mr. Seals' favor on protected speech, explaining it had previously decided Mr. Seals had engaged in constitutionally protected speech when denying Defendants' motions to dismiss. (*Id.*) The district court did so without performing the required *Pickering* balancing test and without affording WCERS advanced notice and an opportunity to

-21-

present legal argument and evidence in opposition to that adverse summary judgment ruling.

Regarding adverse action, the district court stated Mr. Seals had again satisfied his initial burden of showing pension suspension was an adverse action. (*Id.*, PageID.2665-66)

Finally, the district court made improper findings of fact and dismissed Wayne County claiming Mr. Seals had not presented any issues of fact on Wayne County's causative role on the decision to suspend his pension benefits.

*Notably, the district court made these findings while construing all facts in non-movant Mr. Seals' favor*.

## WCERS' Motion for Reconsideration and the District Court's Denial of Same

On November 25, 2022, WCERS filed a motion for reconsideration. (RE 66) WCERS presented legal argument regarding the five factors of *People v. Freedland*, 308 Mich. 449 (1944), which favored Wayne County's and WCERS's legal determinations that Mr. Seals' new job was not exempt under the 1,000-hour Rule. *Id.* WCERS presented new evidence showing the lack of permanency of Mr. Seals' former job which had been eradicated shortly after Mr. Seals' recent promotion. *Id.* The district court nevertheless denied WCERS's motion, showing ***no deference*** to WCERS's legal analysis, indicating the five factors of *Freedland* were susceptible to manipulation. *Id.*

**WCERS' Proposed Jury Instructions**

Before trial, WCERS filed proposed jury instructions that sought jury and/or judicial determinations on all three elements of Mr. Seals' retaliation claim: (1) protected speech; (2) adverse action; and (3) causation. (Proposed Jury Instructions, RE 78, PageID.2970-71) On causation, WCERS requested a jury instruction that Mr. Seals' claim was actionable only upon a finding that WCERS had suspended Mr. Seals' pension benefits because it was motivated in substantial part by a desire to punish Mr. Seals. (*Id.*, at PageID.2971; *id.*, at PageID.2976) WCERS also submitted a jury instruction on proximate causation that Mr. Seals was not entitled to recover damages from WCERS if his damages were caused by a third party (*i.e.*, Wayne County). (*Id.*, at PageID.2975) Finally, WCERS sought a jury instruction on mitigation of damages. (*Id.*, at PageID.2981)

**Mr. Seals' Motion in Limine Regarding "Law-of-the Case" Doctrine (RE 111)**

Mr. Seals filed a motion in limine which argued WCERS could not introduce evidence on protected speech and adverse action at trial because the district court had previously decided both of those elements in Mr. Seals' favor. (Mtn. in Limine, RE 87) WCERS opposed this motion. (Response to Mtn. in Limine, RE 96) Relying on the law-of-the-case doctrine, the district court granted Mr. Seals' motion, ruling it had previously found against WCERS on the first two elements of Mr. Seals' claim. (Opinion and Order, RE 111)

**Mr. Seals' Motion in Limine to Preclude Pension Calculations (RE 86)**

Mr. Seals also filed a motion in limine that sought to preclude WCERS from advancing evidence and legal arguments at trial that Mr. Seals' pension calculation criticisms were wrong. (Mtn. in Limine, RE 86) Mr. Seals argued these issues had already been decided, but, in any event, Mr. Seals argued even false ideas are protected under the First Amendment. (*Id.*) WCERS opposed this motion, arguing that Mr. Seals had knowingly or recklessly repeated false statements about WCERS cheating retirees out of pension benefits. (Response to Mtn. in Limine, RE 95) Again, the district court ruled that it had previously decided the first element of Mr. Seals' claim and, therefore, WCERS was not permitted to introduce evidence of the pension calculations to prove Mr. Seals' speech was not protected. (Opinion and Order, RE 111)

**Trial**

The district court conducted a jury trial over 6 days. Towards the end of the trial, the district court asked the parties to brief jury instructions on causation and mitigation of damages. WCERS did so. (Supplemental Brief, RE 118; Supplemental Brief, RE 119) On September 28, 2023, the district court overruled WCERS's objections to several jury instructions. (Opinion, RE 124) The district court denied a jury instruction on mitigation of damages and issued a confusing "but-for" jury instruction on causation which, in essence, improperly turned causation into a strict-

liability test (as argued below). (Supplemental Briefs, RE 118, 119, and Proposed Jury Instructions, RE 121, 122) The district court also issued a jury instruction (#18) stating that it had previously found in favor of Mr. Seals on the first two elements of his retaliation claim. (Jury Instructions, RE 127, PageID.3724)

WCERS filed a motion pursuant to Fed. R. Civ. P. 50 (*i.e.*, it moved for a judgment as a matter of law or alternatively for a new trial) before submission of the case to the jury, which the district court held under advisement until after the trial. (Trial Transcript, RE 138, PageID.4238-41) On September 29, 2023, the jury entered a verdict in favor of Mr. Seals on causation and awarded him $180,000.00 in damages. (Jury Verdict Form, RE 126; Judgment, RE 128) Because of the district court's improper jury instruction, the jury made no express finding that WCERS had acted with "retaliatory animus".

## **Motion for Judgment as a Matter of Law/New Trial Denied**

On October 20, 2023, WCERS renewed its motion for judgment as a matter of law or alternatively for a new trial. (Mtn. for New Trial, RE 133) On January 8, 2024, the district court denied WCERS's motion. (Opinion and Order, RE 143) On February 6, 2024, WCERS filed a notice of appeal. (Notice of Appeal, RE 149)

## LEGAL ARGUMENT

### The Legal Framework for a First Amendment Retaliation Claim

A plaintiff asserting a First Amendment retaliation claim must allege facts to support the following three elements: (1) the plaintiff engaged in constitutionally protected speech; (2) the defendant took an adverse action against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that speech; and (3) the defendant was "motivated in substantial part by a desire to punish" the plaintiff for the exercise of constitutionally protected speech. *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012); *Atkins v. Mercer*, 2024 WL 1997136, at *2 (W.D. Mich. 2024) ("…retaliatory motive must be a 'but for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.") (citing *Nieves*, 139 S. Ct. 1715, 1721 (2019)).

Whether activity is "protected" or an action is "adverse" depends on the context. *Thadeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)*.* Private speech protecting a public concern is the most protected. *Turner v. Safley,* 482 U.S. 78, 89 (1987). Followed by speech or petition to government employers. *Id.*

Knowingly or recklessly false speech, *i.e.,* defamatory speech, is ***not*** protected by the First Amendment. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-340 (1974); *see also Westmoreland v. Sutherland*, 662 F.3d 714, 722 (6th Cir. 2011) (employee's false statements are unprotected if they were made with "intentional or reckless

disregard for the truth."); *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718 (6th Cir. 2010) (speech at public meetings, especially if they are considered to be about a matter of public concern, constitute protected speech unless they could be objectively proven to be false); *Barrett v. Harrington*, 130 F.3d 246, 263, n. 28 (6th Cir. 1997) (The right to criticize public officials has limits, *e.g.*, when "the conduct spills over into illegal activities such as threats or harassment[.]"); *Farhat v. Jopke*, 370 F.3d 580, 591 (6th Cir. 2004) (First Amendment protection unavailable where public employee knowingly or recklessly made false statements).

Assuming the speech is not defamatory, it must be made by an individual as a citizen on matters of public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006) (citation omitted). When the public employee speaks as an employee on matters of personal interest, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147 (citation omitted). "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti*, at 417.

Whether the speech at issue involves a matter of public concern is a question of law for the court. *Bonnell v. Lorenzo,* 241 F.3d 800, 809–10 (6th Cir. 2001); *Waters v. Churchill,* 511 U.S. 661 (1994). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of

a given statement, as revealed by the whole record." *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003) (quoting *Connick*, 461 U.S. at 147–48); *Barnes v. McDowell*, 848 F.2d 725, 725 (6th Cir. 1988) (public concern does not include quintessential employee beef that management has acted incompetently). "The mere fact that public monies and government efficiency are related to the subject of a public employee's speech do[es] not, by [itself], qualify that speech as being addressed to a matter of public concern." *Jackson v. Leighton*, 168 F.3d 903 (6th Cir. 1999) (quoting *Barnes*, 848 F.2d at 734). When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community at large, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. *Id.* Indeed, "[t]he government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer." *Waters*, 511 U.S. at 675. Such discretion is necessary because "[p]rolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency." *Arnett v. Kennedy,* 416 U.S. 134, 168 (1974). Defendants need not "tolerate action which [they] reasonably believed would disrupt the office, undermine [their] authority, and destroy close working relationships."

-28-

*Connick*, 461 U.S. at 154.

The Sixth Circuit employs a three-step inquiry for analyzing speech by a public employee. *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017). ***First***, the district court ascertains whether the speech addressed a matter of public concern. *Id*. (citing *Connick*, at 143). ***Second***, the district court determines whether the employee spoke as a private citizen or as an employee pursuant to her official duties. *Id*. (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). ***Third***, the district court must balance the interests of the parties and determine if the employee's speech interest outweighs the interest of the public employer in "promoting the efficiency of the public services it performs through its employees." *Id*. (quoting *Pickering*).

Whether the speech addresses a matter of public concern is determined by the speaker's "focus" of the speech; "the point of the speech in question"; "to what purpose the employee spoke"; "the intent of the speech"; or "the communicative purpose of the speaker." *Rodgers,* 344 F.3d at 600; *Taylor v. Keith,* 338 F.3d 639, 645 (6th Cir. 2003) (noting that proper inquiry is the "point of the speech" and "what the speaker intended to communicate"). "Passing" or "fleeting" references to an arguably public matter do not elevate the speech to a matter of "public concern" where the "focus" or "point" of the speech advances only a private interest. *Rodgers*, 344 F.3d at 597–98.

For the third step – *Pickering's* balancing test – the court must seek balance

between promoting "the individual and societal interests that are served when employees speak as citizens on matters of public concern," and respecting "the needs of government employers attempting to perform their important public functions." *Garcetti*, 547 U.S. at 420. After all, government offices could not function if every employment decision became a constitutional matter. *Id.* For example, a plaintiff's speech must not impair discipline by superiors, have a detrimental impact on close working relationships, undermine a legitimate goal or mission of the employer, impede the performance of the speaker's duties, or impair harmony among co-workers. *Rankin*, 483 U.S. at 388; *Pickering*, 391 U.S. at 570–573.

The second element, adverse action, presents a question of fact whether an action is adverse enough to deter a person of ordinary firmness from exercising his or her rights." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). The term "adverse action" arose in the employment context and has traditionally referred to actions such as "discharge, demotions, refusal to fire, nonrenewal of contracts, and failure to promote." *Thaddeus–X*, 175 F.3d at 396. The standard is an attempt to balance the tension between two propositions: First, the injury suffered need not be great because there is no justification for harassing people for exercise of their constitutional rights; but second, a constitutional tort-like any tort-requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment. *Mattox v. City of Forest Park*, 183 F.3d 515, 521

-30-

(6th Cir. 1999). Regarding adverse action: exceptions to statutory rule must be construed narrowly. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005).

The final element, causation, is also typically a fact question. *Rieck v. Hous Auth. Of Covington*, 2024 WL 556221, at *7 (6th Cir. 2024) ("Generally, these [First Amendment retaliation] factors involve fact-based determinations best left to a jury."). The Supreme Court in *Nieves v. Bartlett* recently stated a § 1983 plaintiff must establish a "causal connection" between the defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Id.*, 126 S. Ct. 175, 1722 (2019). Put differently, if "an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id*. The Sixth Circuit explained that causation is best addressed as a two-part inquiry. "First, we determine whether 'the adverse action was proximately caused by an individual defendant's acts,' and second, we consider whether 'the individual taking those acts was motivated ... by a desire to punish [the plaintiff] for the exercise of a constitutional right.'" *King v. Zamiara,* 680 F.3d 686, 695 (6th Cir. 2012). Earlier this year, the Sixth Circuit reiterated that a "plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the [defendant] taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional

right." *Richards v. Perttu*, F.4th 911, 919 (6th Cir. 2024) (citing *King*, *supra*).

As explained below, the district court erred by ignoring fundamental legal principles of a First Amendment retaliation claim.

**A.    The district court committed reversible error when it granted summary judgment *sua sponte* against WCERS on the first element of Mr. Seals' First Amendment retaliation claim, *i.e.*, protected speech.**

"When a district court grants summary judgment *sua sponte*, its decision is subject to two separate standards of review. The substance of the district court's decision is reviewed *de novo* and the procedural aspect of the *sua sponte* ruling is reviewed for abuse of discretion." *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000) (internal citations omitted). "A district court clearly abuses its discretion when it applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Id.* (citing *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000)). If the Court finds a procedural abuse of discretion, it will reverse and remand to provide the district court the opportunity to review all of the evidence before making a substantive decision. *Id.* If the Court finds no abuse of discretion, it will review the decision substantively.

Granting summary judgment *sua sponte* is discouraged. *Beaty v. United States*, 937 F.2d 288, 291 (6th Cir. 1991). Procedural concerns are highest, as here, where the court granted summary judgment in the non-moving party's favor. *Excel*

*Energy*, 246 Fed. Appx. at 959–60. *Sua sponte* dismissal is only permitted where "the losing party was on notice that [it] had to come forward with ***all*** of [its] evidence." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986) (emphasis added). "[A] district court must afford the party against whom *sua sponte* summary judgment is to be entered ten-days' advance notice and an adequate opportunity to respond." *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984). A losing party must also demonstrate it was prejudiced by the district court's failure to provide an opportunity to respond with more evidence. *Excel Energy*, *Inc. v. Cannelton Sales Co.*, 246 Fed. Appx. 953, 960 (6th Cir. 2007). The losing party must "demonstrate [] it could have produced new favorable evidence or arguments had more notice been given." *Turcar LLC v. I.R.S.*, 451 Fed. Appx. 509, 515 (6th Cir. 2011).

The Supreme Court amended Fed. R. Civ. P. 56 in 2010 to add subsection (f), which requires advance notice to the nonmoving party and an opportunity to respond. This rule exists because the party who moves for summary judgment and represents that the pleadings/documents are sufficient to grant judgment is strategically not focusing on presenting evidence that presents a material issue of fact precluding summary judgment. Summary judgment movants (smart ones) only highlight evidence and argument that demonstrate no material issue of fact.

The district court's summary judgment order improperly states that it ruled Mr. Seals' speech was protected as a matter of law as early as its October 30, 2020

order denying Defendants' motions to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). (Opinion and Order, RE 22) If true, the district court improperly made this "ruling" while construing all factual allegations of the complaint in Mr. Seals' favor, *i.e.,* assuming Mr. Seals' criticisms were truthful (*e.g.,* WCERS ***was*** cheating Mr. Seals and other Wayne County retirees). ***An accusation for which Mr. Seals never provided supporting evidence***. The district court made this "ruling" even before Defendants filed answers and even though Mr. Seals had not filed a motion seeking judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The district court committed reversible error under these circumstances. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) ("…whether [] allegations are in fact true or whether the alleged harassment would actually deter a person of ordinary firmness are not questions that we address at the pleading stage.").

Alternatively, if the district court's *sua sponte* "ruling" occurred later at the summary judgment stage of the case, the district court violated Fed. R. Civ. P. 56(f) by failing to notify WCERS in advance that it was going to adversely grant judgment on this element of the claim and by failing to give WCERS ten days to submit an opposition brief before entering adverse judgment. *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005) (Before granting summary judgment *sua sponte,* a district court "must put 'the losing party [] on notice that it ha[s] to come forward

with all of its evidence [and afford a] reasonable opportunity to respond to all the issues to be considered by the court.'").

This Court has reversed or remanded similarly improper district court *sua sponte* rulings. *Advanced Concrete Tools, Inc. v. Beach*, 525 Fed. Appx. 317 (6th Cir. 2013) (district court's order entering summary judgment *sua sponte* was in error and required reversal); *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821 (6th Cir. 2013) (same); *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 Fed. Appx. 953 (6th Cir. 2007) (same).

This case is more compelling than the above cases because Mr. Seals obtained summary judgment without even filing a motion. Moreover, the briefing and evidence submitted by both sides indicated material disputes of fact including whether Mr. Seals' criticisms were defamatory, whether they were made by Mr. Seals as a citizen (rather than as an employee), and whether they concerned matters important to the public. Additionally, the district court erred by failing to perform the required *Pickering* balancing test. And the district court made its improper ruling on the first element, protected speech, ***while construing all facts in Mr. Seals' favor, and as early as the motion to dismiss stage of the case***. Before granting such relief against WCERS, the district court was required to give WCERS an opportunity to

present all arguments and evidence in opposition to summary judgment, and construe all facts and legal argument in WCERS's favor.[1]

WCERS anticipates that Mr. Seals may argue the district court substantially complied with Fed. R. Civ. P. 56 because WCERS had later opportunities to set this decision aside, for example by filing the motion for reconsideration and/or by later opposing Mr. Seals' motion *in limine* regarding the law-of-the-case doctrine. However, both "opportunities" improperly came ***after*** the district court's rulings – not before, which is what Fed. R. Civ. P. 56 requires. And in both later "opportunities," the district court did not construe facts and legal arguments in WCERS's favor. Just the opposite. The district court summarily denied WCERS's motion for reconsideration criticizing WCERS for advancing arguments that could have been presented earlier. Additionally, the district court perfunctorily and improperly granted Mr. Seals' motion *in limine* which requested law-of-the-case treatment and "reaffirmed" these improper rulings as "law of the case." This also was reversible error because the law-of-the-case doctrine did not apply or, alternatively, this doctrine should not have applied under these circumstances (*i.e.,* given the district court's earlier erroneous decisions).

---

[1] The district court's order did not formally enter judgment against WCERS. It merely denied WCERS's summary judgment motion but stated within the body of the order that Mr. Seals' speech is protected under the First Amendment as a matter of law. (Opinion and Order, RE 64, PageID.2664)

This case is like *Kindle v. City of Jeffersontown, Ky*, 589 Fed. Appx. 747, 753 (6th Cir. 2014), where "[m]ere recitation of factual matters assumed for purposes of decision are not part of the mandate, nor do they form the 'law of the case.'" *Id*. Here, the district court merely assumed without "deciding" Mr. Seals' criticisms were true. Because no conclusion of law or issue of fact was actually and definitively decided, the law-of-the-case doctrine did not apply. *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) ("Because Judge Hood did not make a finding about [an issue], it was an abuse of discretion for Judge Borman to hold that the law-of-the-case doctrine barred him from considering this [undecided] issue."). Alternatively, the district court should have applied a judicially-recognized exception to the law-of-the-case doctrine. *Handi Inv. Co. v. Mobil Oil Corp.*, 653 F.2d 391, 392 (9th Cir. 1981) (erroneous decisions are not law of the case).

The district court's summary judgment order should be vacated, and WCERS requests judgment as a matter of law in its favor.

### i.   Mr. Seals' criticisms were defamatory because they were false and he published them knowingly and recklessly.

Many of Mr. Seals' statements (written and verbal) were personal attacks that are demonstrably false. Such defamatory speech is not entitled to ***any*** First Amendment protection. Mr. Seals went so far as to shamelessly exploit George Floyd's wrongful death – a national tragedy – in hopes of compelling Wayne County and WCERS to pay him additional money to which he was not entitled: "…Grden

is **"putting his knee on the necks"** of your retirees … Director Grden and Commissioner Simone are "cutting the air supply" of certain retirees." (Mtn. to Dismiss, RE 13, PageID.313; Emails, RE 13-2, PageID.487)

Had the district court afforded WCERS an opportunity to present evidence/argument in opposition to its adverse ruling, WCERS would have submitted evidence proving Mr. Seals' criticisms were unprotected, false, and defamatory. As noted above, Mr. Seals was baselessly arguing his Average Final Calculation formula for his pension benefits should be based on four, not five, years, in contradiction of the Legislative Executive Plan language. Moreover, WCERS would have submitted additional evidence such as internal/external audits of its pension payments for Mr. Seals' plan which conclusively demonstrate WCERS had calculated and paid these benefits correctly and consistently for all retirees using the same methodology since 2009 when Mr. Seals' pension plan went into effect. The district court, however, prevented WCERS from introducing this evidence at trial when it wrongly granted Mr. Seals' motion in limine to exclude all pension calculations. (Opinion and Order, RE 111)

### ii.    Mr. Seals' criticisms were about a private, not public, concern.

Moreover, this was a very personal, malicious, and longstanding (at least 10 years) harassment by Mr. Seals of WCERS and its Executive Director, Mr. Grden. Mr. Seals' "beef" was a classic, private employer-employee beef about his pension.

His references to the purported cheating of "black retirees" were merely opportunistic and baseless "passing" references that were "incidental to the [original personal] message conveyed." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (no First Amendment right to file frivolous grievances). Mr. Seals' abuse of the Wayne County pension system was not protected conduct.

### iii.    The district court failed to conduct the *Pickering* balancing test.

Mr. Seals' retaliation claim also fails because he could not satisfy *Pickering's* balancing test. The district court never conducted this balancing test but if it had, this balancing test favors WCERS. Years of false criticisms and harassment on the one hand versus WCERS's dedication to following the law and paying Mr. Seals and other retirees equally what they are owed under the law. Mr. Seals could only rehash his incorrect calculation that WCERS had previously analyzed and explained to him was wrong.

Under similar circumstances, courts have found in favor of the government system. For example, in *Connick*, the Supreme Court found "questions in a questionnaire [were not protected] because [they were] not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors. These questions reflect one employee's dissatisfaction with a transfer and an attempt to turn that displeasure into a cause celèbre." *Connick v. Myers*, 461 U.S. 138, 148 (1983). The Court correctly found

plaintiff's statements "impeded [the employee's] proper performance of his daily duties [and] interfered with the regular operations of the [office]." *Id.*, at 166-67. *See also Meyers v. City of Cincinnati*, 934 F.2d 726 (6th Cir. 1991) ("This issue [of the conflict of interest] has long been laid to rest and reviving the issue serves no good purpose and was directly disparaging of the Board, its policies and members."); *Waters v. Churchill*, 511 U.S. 661 (1994) ("[T]he extra power the government has in this area comes from the nature of the government's mission as an employer. Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible."); *Dye v. Office of the Racing Com'n*, 702 F.3d 286 (6th Cir. 2012) (under *Pickering*, speech not protected because it was plainly disruptive to the agency's effective operation).

Here, there was no loss of employment; just enforcement of the 1,000-hour Rule consistent with Michigan law and Wayne County policy. Context is important. As in the above cases, Mr. Seals' repeated harassment and false complaints were disruptive to both his employer, Wayne County, and to WCERS. Mr. Seals was improperly demanding benefits contrary to his plan and Michigan law. WCERS is successful because of the continuing trust it has built and earned with its retirees by paying retirees all monies owed to them (nothing more or less). *Pickering's* balancing test supports WCERS's duty to apply the 1,000-hour Rule ***equally*** to all

of its reemployed retirees. On this ground alone, the district court's judgment should be reversed and judgment entered in favor of WCERS.

**B.    The district court committed reversible error when it entered summary judgment *sua sponte* against WCERS on the second element of Mr. Seals' retaliation claim, *i.e.,* adverse action.**[2]

This case is distinct from the typical adverse-action employment retaliation case because it does not involve disciplinary action such as termination of employment. It involves instead a simple $38/month dispute over pension benefits. Under these circumstances, a district court should "tailor [its] analysis under the adverse action prong to the circumstances of this specific retaliation claim." *Dye v. Office of the Racing Com'n*, 702 F.3d 286, 303–04 (6th Cir. 2012). This case is more akin to First Amendment retaliation claims involving prisoners where the prisoner/plaintiff wrongly claims retaliation because of actions taken pursuant to legitimate prison regulations. In those cases, courts apply a balancing test to discern if the regulation is reasonably related to legitimate penological interests. In our view, such a standard is necessary if "prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Fritz v. Charter Tp. of Comstock*, 592 F.3d 718 (6th Cir. 2010) (plaintiff was violating ordinances; ergo, punishment was not retaliatory

---

[2] The arguments above (the district court erroneously granting summary judgment *sua sponte* on the first element) apply equally to the district court's grant of summary judgment *sua sponte* on the second element.

adverse action); *Brookins v. Kolb*, 990 F.2d 308 (7th Cir. 1993) (transfer of inmate was not in retaliation for exercise of his constitutional rights but because he ignored established prison policy).

Stated differently, there can be no retaliatory adverse action when the action taken is ***required by law***. *Young v. Ream*, 2020 WL 7701021, at *6 (E.D. Mich. 2020) (misconduct charge is not an adverse action if inmate was violating a legitimate prison regulation); *Giacopelli v. Inc. Vill. of Malverne*, 829 F. Supp. 2d 131, 145–46 (E.D. N.Y. 2011) (summary judgment granted for defendant because, when a change to pension benefits is mandated by law, there is no causal connection between the protected speech and "adverse action"); *Gawlik v. Strom*, 2023 WL 5979992, at *6 (D. Conn. 2023) ("…if Plaintiff is not entitled to receive social security benefits while he is a sentenced prisoner, and if distribution of those benefits were to be discontinued upon a realization that Plaintiff is serving a prison sentence, then that termination of the unjust disbursement of benefits would not be retaliation.").

Similarly, Mr. Seals does not have a constitutionally protected property interest in pension benefits above and beyond what he is entitled to receive because demanding such unearned benefits is detrimental to other pensioners. On this basis alone, the district court judgment should be reversed and judgment entered in WCERS's favor. *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891 (6th Cir. 2001) (granting summary judgment in favor of defendant).

**C.    The district court erred by not ruling as a matter of law that Mr. Seals' new job was subject to the 1,000-hour Rule.**

The exclusive remedy for challenging a decision of a quasi-judicial body like Wayne County and/or WCERS is to seek a writ of superintending control in the local state circuit court. MCR 3.302(C). Mr. Seals, however, did not pursue that remedy.

A court's review of an administrative agency's decision is limited to determining whether the decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected by a substantial and material error of law. Const. 1963, art. 6, § 28; MCL § 24.306; *Boyd*, 559 N.W.2d 342. "Substantial" means evidence that a reasoning mind would accept as sufficient to support a conclusion. *Kotmar, Ltd. v. Liquor Control Comm.*, 207 Mich. App. 687, 689 (1994).

Here, the district court committed reversible error by ignoring and/or dismissively treating Wayne County and WCERS's determinations and by never making its own ruling – based on the whole record – answering whether Mr. Seals' new, temporary, "quasi-deputy" position was exempt from the 1,000-hour Rule. The district court merely critiqued the legal conclusions reached by Wayne County and WCERS based on *Freedland's* factors, while assuming all facts in Mr. Seals' favor. The district court improperly showed no deference to the administrative decisions of Wayne County and WCERS while misconstruing *Freedland*'s factors.

-43-

Relying on *Dearborn Fire Fighters Union, Local No. 412, I.A.F.F. v. City of Dearborn*, 394 Mich. 229, 309–10 (1975), the district court wrongly concluded not all five *Freeland* factors must be satisfied to be a "public official." The *Dearborn* court, however, made no such ruling because there was no majority opinion in that case. *Id.* Only four justices participated in the *Dearborn* decision, and they split 2-2 on the outcome. The district court improperly relied on language from the dissenting opinion of Justice Williams, which is wholly idiosyncratic and contrary to Michigan law. Prior to *Dearborn* and since, as recently as 2019, the Michigan Supreme Court has consistently held all *Freeland* factors are indispensable. *People v. Bruce*, 504 Mich. 555 (2019) (holding "five elements are indispensable" for determining if a job is a public official); *People v. H&L*, 459 Mich. 348 (1999) (same).[3]

In fact, as well as law, Wayne County and WCERS correctly (*i.e.,* not arbitrarily or capriciously) determined that Mr. Seals' new job position was ***not*** exempt from the 1,000-hour Rule. First, Mr. Seals' position was not established pursuant to legislative mandate. Instead, Wayne County Court Clerk Cathy Garrett created this new "quasi-deputy" position for Mr. Seals without any legislative action, which was confirmed by Wayne County HR records. Nor did Mr. Seals' new position possess a delegation of a portion of the sovereign power of government to be

---

[3] The district court also ignored Wayne County policy, which requires a showing of ***every*** factor. (RE 80-1, PageID.3029)

exercised for the benefit of the public because the County Clerk had already appointed a "chief" deputy designated as the "successor" to the County Clerk in case of her vacancy. MCL § 50.63. Moreover, MCL §168.191 provides a person must be a "registered and qualified elector of the county" to serve as a county clerk whereas it was undisputed Mr. Seals does not reside in Wayne County and thus could not be a "registered and qualified elector" of Wayne County eligible to step in and serve as the Wayne County Clerk. Consequently, Mr. Seals cannot claim to be delegated with a portion of the power of the sovereign. The third *Freedland* factor also weighed against Mr. Seals' exemption because his job duties and responsibilities were assigned at the pleasure of the County Clerk, rather than discretionary duties and powers derived from legislative direction. Mr. Seals' job duties were clearly defined by the Clerk in the job description, not by law. Mr. Seals was supervised by both the Clerk and the "Chief Deputy Clerk" and was given "direction" by either. Further, Mr. Seals' "quasi-deputy" position had no defined term or tenure, unlike the defendant in the *Freedland* case whose office could not be abolished except by legislative action.

Mr. Seals' job position also did not satisfy the fifth *Freedland* factor, because it had no permanency or continuity. It was only temporary. Ms. Garrett created the new "quasi-deputy" job title specifically for Mr. Seals before he assumed this role and the identical job responsibilities had previously been fulfilled by a non-

appointed public-servant financial officer named Mr. John Ude. Mr. Seals' job ended when the County Clerk appointed Mr. Seals to be her Chief Deputy in 2022, and she promptly abolished Mr. Seals' former job as easily as she created it; again, without legislative action. *Raven v. Board of Com'rs of Wayne County*, 399 Mich. 585, 588 (1977); *Freedland*, *supra*, at 552-553. By freezing a position shortly after its creation, and using the salary associated with the position to fund a non-appointed civil servant assistant-clerk position, the Clerk left no doubt the job was only temporary. Lack of permanency was crucial to the Michigan Supreme Court's opinion in *Raven*, which held that without permanency the deputy county official was ***not*** an appointed official exempt from the 1,000 hour-Rule. *Id.* Lack of permanency was crucial to the independent decisions reached by Wayne County and the WCERS. *Id.* After all, if such a temporary position meets the permanency requirement established by the Michigan Supreme Court, then what possible position would not?

Finally, by Mr. Seals' own admission, the County Clerk did not duly appoint him to this position as required by statute. (Amended Complaint, RE 5, PageID.33, at ¶¶ 28-29; Trial Transcript (Seals), RE 159, PageID.4828) MCL § 50.63 requires a deputy county clerk "be approved by the circuit judge … and filed in the office of the county treasurer." Conversely, Mr. Seals admitted his "appointment" did not involve "approval by a circuit judge or filing with the County Treasurer." *Id*.

*Universities Research Assn., Inc. v. Coutu*, 450 U.S. 754 (1981) added that oath and bond requirements are "of assistance" in determining whether a job is a public officer.[4]

Here, Wayne County and WCERS independently and appropriately decided Mr. Seals' new job position was not exempt because it did not satisfy Michigan law and Wayne County policy, and because a contrary ruling would have created dangerous precedent threatening the solvency of the pension trust. If Defendants had determined the opposite and recognized Mr. Seals' position to be a public official, then every other civil-servant employee working for any department could similarly be "deputized" to "qualify" as a public official. Defendants' independent determinations were reasonable and only bolstered by Supreme Court precedence that exemptions from a statute should be narrowly construed. *C.I.R. v. Clark*, 489 U.S. 726 (1989).

The district court failed to apply due deference to the administrative expertise of Wayne County and WCERS, and invaded administrative fact finding by displacing an agency's choice between two reasonably differing views. *MERC v.*

---

[4] *Coutu* discusses how different legal contexts affect *Freedland's* application. Notably, where the issue is strictly financial as in this case, as opposed to related to performance of duties, courts have trended away from finding in favor of a public office/officer.

*Detroit Symphony Orchestra*, 393 Mich. 116, 124 (1974); *In re Kurzyniec Estate,* 207 Mich. App. 531, 537 (1994). The district court erred by ignoring these agency decisions. *In re Grant*, 250 Mich. App. 13, 19 (2002).

## D.    The district court erred with its jury instructions and related rulings (RE 124; 127).

The district court's jury instruction #17 wrongly communicated to the jury that the district court had already found against WCERS on the first two elements of Mr. Seals' retaliation claim which wrongly prejudged WCERS as "guilty" and influenced the jury's finding on the final element, causation. (Jury Instructions, RE 127, PageID.3724) Instead, the district court should have issued WCERS's proposed jury instruction #27 which indicated all elements of Mr. Seals' claim still needed to be decided at trial. (Proposed Jury Instructions, RE 78, PageID.2970)

The district court also committed error by rejecting WCERS's proposed causation jury instructions, #30, #31, and #32, which were based on Supreme Court and Sixth Circuit precedent that require a finding of a defendant's retaliatory animus before judgment can be entered on a retaliation claim. (*Id.*, PageID.2974-76) Its improper decision in this regard is reflected in its Opinion, RE 124.

The U.S. Supreme Court in *Hartman v. Moore*, 547 U.S. 250 (2006), and more recently in *Nieves v. Bartlett*, 126 S. Ct. 1715 (2019) and *Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253 (2022), held that a plaintiff can only establish causation if it proves the state actor acted with a "forbidden" "retaliatory animus." According to

*Nieves*, a § 1983 plaintiff pursuing a retaliation claim must establish a "causal connection" between the defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Nieves*, at 1722. "If an official takes adverse action against someone based on that forbidden motive … the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (emphasis added); *see also Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1255 (2022) ("A [claimant] must show that the government took an 'adverse action' in response to his speech that 'would not have been taken absent the retaliatory motive.'"); *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) ("Here [in assessing causation] the subjective motivation of the defendant[] is at issue."); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (plaintiff must prove defendant's alleged retaliatory conduct) (citing *Mt. Healthy*, 429 U.S. 274 (1977)). As explained in *Rideout v. Shelby Twp.*, 2023 WL 5917392, at *11 (E.D. Mich. 2023), "[t]he critical element of a First Amendment retaliation claim is that the defendant has a mental state that is more like an intentional tort – the subjective intent to punish the plaintiff." Indeed, "[s]ubjective motivation appropriately enters the picture … because our concern is with actions by public officials taken with the intent to deter the rights to free expression guaranteed under the First Amendment." *Id.* (citations omitted). Retaliation is, by definition, an intentional act. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167

(2005). It is a form of "discrimination" because the complainant is being subjected to differential treatment. *Olmstead v. L. C.,* 527 U.S. 581, 614 (1999).

In accordance with precedent, WCERS submitted, *inter alia,* the following jury instruction:

> For Mr. Seals to prevail, he must show that his speech was a substantial or motivating factor of harmful action. *Lemaster v. Lawrence Cnty., Ky*, 65 F.4th 302, 309 (6th Cir. 2023). In other words, Mr. Seals must establish a causal connection between [] [WCERS's] purported "retaliatory animus" and the "subsequent injury." To find for Mr. Seals, he must prove that [] [WCERS] had a retaliatory animus that caused the injury. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). "The true object of this inquiry is to determine whether the plaintiff has been retaliated against as a direct result of his or her protected speech." *Paterek v. Vill of Armada, Michigan*, 801 F.3d 630, 646 (6th Cir. 2015). [Proposed Jury Instructions, RE 122, PageID.3659.]

Over WCERS's objection, the district court submitted the following confusing "but-for" jury instruction:

> For a First Amendment plaintiff to recover under § 1983, the protected speech must be a "but-for" cause of an adverse action. This test is met if a plaintiff would not have suffered the harm "but for" the speech. It is not met if the plaintiff would have suffered the harm even if the plaintiff had stayed silent.

> When a public employee alleges that the government has retaliated against him because of his speech, a burden-shifting approach applies.

> Under it, the Plaintiff must first show that his speech was a substantial or motivating factor of the adverse action taken by the Defendant. This part of the test does not require a but-for relationship. After all, speech sometimes may motivate a Defendant's adverse action even if the defendant would have taken the same action for another reason without the speech.

If the Plaintiff meets this first part of the test, then the burden shifts to the Defendant. Under the second part of the test, the Defendant can avoid liability by proving that it would have taken the same action even if the Plaintiff had not spoken. In other words, the Defendant must prove the absence of but-for causation. [Jury Instructions, RE 127, PageID.3725.]

The jury instruction is confusing because it mentions "but-for" three times without mentioning a required finding of retaliatory intent. The jury instruction wrongly gave the jury authority to find in Mr. Seals' favor simply if it concluded Mr. Seals' criticisms were a "but-for" cause of WCERS later voting to suspend his pension (*i.e.,* a strict-liability standard). This was an improper ask of the jury because it completely ignored retaliatory motive in favor of a strict-liability "but-for" standard that Mr. Seals easily met in this case because (1) but for Mr. Seals' job change in 2019, (2) but for Mr. Seals complaining about his pension calculations during a July 2019 WCERS meeting, (3) but for Wayne County P/HR not disclosing Mr. Seals' job change to WCERS (indisputably contrary to Wayne County policy), and (4) but for WCERS Commissioner Tom Yee disclosing to his fellow Commissioners at the September 30, 2019 board meeting that Mr. Seals had changed jobs and was now working in a new position at the Clerk's office, Commissioner Macdonald never would have asked Wayne County Corporation Counsel – who was also present at this meeting – if Wayne County had determined whether Mr. Seals' new position was exempt under the 1,000-hour Rule.

As a result of this reasonable inquiry by WCERS, Corporation Counsel

-51-

conducted an independent legal analysis, and Wayne County (P/HR Director Mahlin) issued a January 17, 2020 letter which stated Wayne County decided Mr. Seals' new job position was not exempt. In other words, but for Mr. Seals' criticisms in 2019, WCERS never would have learned that Mr. Seals had changed jobs, and Mr. Seals likely would have continued to collect his pension benefits without suspension. There is nothing wrongful or retaliatory about these facts. Predictably, using the district court's jury instruction, the jury found but-for causation and that WCERS was liable for retaliation.[5] The jury did so, however, without any finding WCERS had acted with retaliatory animus towards Mr. Seals (*i.e.*, the crux of a retaliation claim). The jury's but-for conclusion was contrary to established precedent which requires a finding of retaliatory intent.

Mr. Seals may argue, with the help of his subordinate Mr. Yee's trial testimony, Mr. Seals demonstrated WCERS acted with retaliatory intent. That is indisputably false. Mr. Yee recused himself from any and all business involving Mr. Seals after WCERS's September 30, 2019 meeting. (Trial Transcript (Yee), RE 159, PageID.4732; Trial Transcript (McDonald), RE 161, PageID.5009; Jury Instructions (Stipulations), RE 127, PageID.3722) At the September 30, 2019 meeting (*i.e.*, when Mr. Yee revealed to WCERS that Mr. Seals was his boss), Commissioner Macdonald

---

[5] Similarly, the jury could not rule for WCERS under the burden-shifting instruction (*i.e.*, to prove the "absence of but-for causation") because WCERS simply learned of Mr. Seals' job change through Mr. Yee because of Mr. Seals' complaints.

simply and dutifully asked Wayne County Corporation Counsel if Wayne County had made a 1,000-hour-Rule determination with respect to Mr. Seals' new job. (Trial Transcript (Macdonald), RE 161, PageID.5024-25) This question about the legal status of Mr. Seals' new job, by law is not evidence of retaliation.

The parties stipulated WCERS is administered by the Commission and pursuant to Section 141-35 of the Wayne County Retirement Ordinance. (Jury Instructions (Stipulations), RE 127, PageID.3722) This undisputed fact is critical, because the ordinance requires a quorum (*i.e.*, four concurring votes) to take legal action:

> (d)   *Quorum; record of proceedings.* Four trustees shall constitute a quorum at any meeting of the retirement commission. At least four concurring votes shall be required for a valid action by the retirement commission. The retirement commission shall keep a written record of its proceedings.

Comments purportedly made by one Commissioner much later against Mr. Yee, which did not occur at the September 30, 2019 meeting – or at any other meeting where Mr. Seals' pension was discussed – ***are entirely irrelevant***. Moreover, Mr. Yee admitted at trial he was Mr. Seals' "right-hand man" and that his "job is to protect him and execute his orders[.]" (Trial Transcript (Yee), RE 159, PageID.4696, 4765)

The district court also committed legal error by refusing to include a jury instruction that would have allowed the jury to award no damages if it found someone other than WCERS was responsible for Mr. Seals' damages, *i.e.,* Wayne

County or Mr. Seals himself. (Proposed Jury Instructions, RE 78, PageID.2975, #31 Proximate Cause; *see id.*, at PageID.2991)

Similarly, the district court wrongly refused to issue a jury instruction on mitigation of damages when plaintiffs have a duty to mitigate in 1983 cases (*Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1993)) and when the evidence showed Mr. Seals could have avoided the pension suspension by becoming the Chief Deputy Clerk or a contract consultant to Wayne County, rather than remain a Wayne County quasi-deputy employee. Mr. Seals admitted at trial he made no such effort.

The district court's jury instructions deprived WCERS of a fair and impartial jury trial. Under similar circumstances, the Sixth Circuit has ordered new trials. *Fryman v. Federal Crop Ins. Corp.*, 936 F.2d 244 (6th Cir. 1991) (new trial appropriate where district court allowed jury to find a constitutional violation without including instruction on the necessary elements).

## E. The district court erred when it dismissed Wayne County as a defendant.

Finally, in granting Wayne County's motion for summary judgment, the district court improperly made findings of fact that Wayne County did not act with retaliatory intent when the record showed disputed issues of material facts on that question. After all, the decision that Mr. Seals' pension had to be suspended was made in the first instance (and according to policy) by Wayne County. However, contrary to policy, Wayne County failed to notify WCERS of Mr. Seals' new position

before it rehired him. Mr. Seals testified he spoke with Corporation Counsel about this new position before accepting same and was assured the job position was exempt under the 1,000-hour Rule. Corporation Counsel conducted an independent analysis of Mr. Seals' job position, which resulted in Wayne County's decision to suspend Mr. Seals' pension benefits. WCERS is the only entity that can actually turn off and on pension payments, and it conducted an independent legal analysis of the 1,000-hour Rule. However, WCERS's analysis and conclusion never would have occurred had Wayne County initially decided differently. Before Wayne County's decision, in light of Mr. Seals' repeated threats to sue, WCERS's witnesses testified they had hoped Wayne County would decide Mr. Seals' new position ***was*** exempt from the 1,000-hour Rule. (Trial Transcript (McDonald), RE 160, PageID.4987) Moreover, Mr. Seals claimed Wayne County and WCERS both conspired against him. *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985) (For civil conspiracy, "[a]ll that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."). An "[e]xpress agreement among all the conspirators is not necessary . . . Each conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Id.*

-55-

The result of the district court's error is that WCERS has been punished for relying on, in the district court's opinion, a faulty analysis by Wayne County. Under these circumstances, the district court erred by dismissing Wayne County as a defendant when it was undisputed that Wayne County was the initial decision maker.

## CONCLUSION

The judgment entered in Mr. Seals' favor wrongly and preferentially awarded him pension benefits to the detriment of all other Wayne County retirees. Mr. Seals did not prove any discriminatory treatment in this lawsuit. Just the opposite. Mr. Seals asked for, and was wrongly awarded, unique/illegal benefits to which he is not entitled. WCERS requests an order reversing the judgment and granting judgment in its favor, and such other relief as the Court deems necessary and just.

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**          **VANOVERBEKE, MICHAUD, TIMMONY, P.C.**

/s/ Seth D. Gould                              Robert J. Abb (P76901)
Seth D. Gould (P45465)                    79 Alfred St.
Jacob M. Campbell (P83900)            Detroit, MI 48201
950 W. University Dr., Ste. 300         T: (313) 578-1200
Rochester, MI 48307                         Email: rabb@vmtlaw.com
T: (248) 841-2200
F: (248) 652-2852                             *Attorneys for Defendant-Appellant*
Email: sdg@miller.law
Email: jc@miller.law

Dated: July 24, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7), I hereby certify that the foregoing *corrected* brief complies with the type-volume limitations in Fed. R. App. 32(a)(7)(B) because, as counted by the word-count tool used by Microsoft Word, the application used to prepare this brief, the word count is 12,986 words, excluding the parts exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b), and the typeface requirements in Fed. R. App. P. 32(a)(5) are satisfied by using 14-point Times New Roman font.

THE MILLER LAW FIRM, P.C.

/s/ Seth D. Gould
Seth D. Gould
*Attorneys for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I, Seth D. Gould, hereby certify that on July 24, 2024, I filed Appellant's
*Corrected* Principal Brief electronically through Pacer (CM/ECF), thereby
providing notice to counsel of record.

THE MILLER LAW FIRM, P.C.

/s/ Seth D. Gould
Seth D. Gould
*Attorneys for Defendant-Appellant*

**ADDENDUM**

**(Designation of Relevant District Court Documents)**

Pursuant to 6 Cir. R. 28(b)(1)(A)(i), WCERS designates the following docket

entries from the district court case, *i.e.*, Case No. 2:20-cv-11272 in the U.S. District

Court, Eastern District of Michigan:

| __RE__ | __Description__ | __Page ID / # Range__ |
|:---:|:---:|:---:|
| 1 | Complaint | 9 |
| 5 | Amended Complaint | 33 |
| 12 | Mtn. to Dismiss (by Wayne County) | |
| 13 | Mtn. to Dismiss (by WCERS/Grden) | 313 |
| 13-2 | Emails | 466-467, 487 |
| 22 | Opinion and Order (Denying Mtns. to Dismiss) | |
| 52 | Mtn. for Summary Judgment (by WCERS, Grden) | |
| 52-2 | Wayne County P/HR Requisition Form | 1028-1038 |
| 52-2 | Meeting Minutes | 1056-1057, 1067-1064, 1072, 1109-1110 |
| 52-2 | Affidavit | 1085, 1087 |
| 52-2 | Emails | 1157, 1162 |
| 52-3 | Deposition Transcript (Seals) | 1211, 1221-1222, 1417-1418, 1554 |
| 52-5 | Deposition Transcript (Grden) | 2041 |
| 54 | Motion for Summary Judgment (by Wayne County) | |
| 58 | Response to Mtn. for Summary Judgment | |
| 59 | Stipulated Order (Dismissing Grden) | |
| 64 | Opinion and Order (Denying WCERS's Mtn. for Summary Judgment; Granting Wayne County's Mtn. for Summary Judgment) | 2664-2666 |

| 66 | Mtn. for Reconsideration (of RE 64) | 2694-2695 |
|---|---|---|
| 66-2 | Emails | 2730-2731 |
| 70 | Opinion and Order (Denying RE 66) | |
| 78 | Proposed Jury Instructions (by WCERS) | 2970-2971, 2974-2976, 2976, 2981, 2991 |
| 80 | Trial Brief (by WCERS) | 3003-3004, 3005, 3009, 3011 |
| 80-1 | Wayne County Policy ("Retirants Returning to Wayne County Employment") | 3004, 3029 |
| 86 | Mtn. in Limine (by Seals to Exclude Pension Calculations) | |
| 87 | Mtn. in Limine (by Seals re: the Law-of-the-Case) | |
| 95 | Response to Mtn. in Limine (by WCERS re: Pension Calculations) | |
| 96 | Response to Mtn. in Limine (by WCERS re: Law-of-the-Case) | |
| 111 | Opinion and Order (Ruling on Various Motions in Limine) | |
| 116 | Order (Regarding Briefs on Disputed Jury Instructions) | |
| 118 | Supplemental Brief (by WCERS on Mitigation of Damages) | |
| 119 | Supplemental Brief (by WCERS on Causation Element) | |
| 122 | Proposed Jury Instructions (by WCERS) | 3659 |
| 124 | Opinion (On Disputed Jury Instructions) | |
| 126 | Jury Verdict Form | |
| 127 | Jury Instructions | 3720-3721, 3722, 3724, 3725 |

| 128 | Judgment | |
|---|---|---|
| 130 | Trial Transcript (Seals) | 3890, 3897 |
| 131 | Trial Transcript (Seals) | 3960-3961 |
| 131 | Trial Transcript (Van de Grift) | 4015 |
| 132 | Trial Transcript (Grden) | 4109, 4113-4115, 4122-4123, 4124, 4125-4126, 4137, 4139 |
| 133 | Mtn. for JMOL/New Trial | |
| 138 | Trial Transcript (Rule 50 Mtn.) | 4238-4241 |
| 143 | Opinion and Order (Denying RE 133) | |
| 149 | Notice of Appeal (by WCERS) | |
| 159 | Trial Transcript (Yee) | 4696, 4732, 4752, 4764-4765, 4784-4785 |
| 159 | Trial Transcript (Seals) | 4739-4740, 4816, 4817, 4828, 4829, 4830-4831 |
| 160 | Trial Transcript (McDonald) | 4983, 4985-4987 |
| 160 | Trial Transcript (Van de Grift) | 4905, 4921-4929, 4931-4932, 4938, 4939-4941, 4949-4951 |
| 160 | Trial Transcript (Seals) | 4850-4851, 4852-4853, 4862-4863, 4867, 4882-4883, 4884-4885, 4895-4897 |
| 160 | Trial Transcript (Stipulations) | 4960-4962 |
| 161 | Trial Transcript (Macdonald) | 5000, 5009, 5020, 5022-5023, 5024-5025, 5030, 5042-5045, 5059-5060 |
| 161 | Trial Transcript (Grden) | 5064-66, 5068-5069, 5072-5074, 5075-5076, 5081-5083 |