CASE NO. 24-1098

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

DWAYNE B. SEALS

Plaintiff – Appellee

v.

WAYNE COUNTY, MICHIGAN

Defendant,

WAYNE COUNTY, MICHIGAN EMPLOYEES' RETIREMENT SYSTEM,

Defendant-Appellant.

On Appeal from the United States District Court for the Eastern District of
Michigan, District Court No. 2: 20-cv-11272
Hon. Sean F. Cox

---

## BRIEF OF PLAINTIFF-APPELLEE

---

**NACHTLAW, P.C.**
David A. Nacht (P47034)
501 Avis Dr. Suite 3
Ann Arbor, MI 48108
Tel:   (734) 663-7550
dnacht@nachtlaw.com

*Attorney for Plaintiff- Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT......................... vii

STATEMENT OF JURISDICTION .................................................... viii

STATEMENT OF ISSUES ................................................................. ix

STATEMENT OF THE CASE..............................................................x

SUMMARY OF THE ARGUMENT .................................................. xiii

STATEMENT OF FACTS ...................................................................1

A. Background: Mr. Seals' Retirement and Return to Employment with the Wayne County Register of Deeds...................................................................1

B. Mr. Seals' Employment with the Wayne County Clerk ....................................2

C. Mr. Seals Begins Engaging in Protected Speech in July 2019, Angering the Retirement Commission ............................................................3

D. WCERS Threatens to Silence Mr. Seals, But He Continues Speaking............6

E. Defendant Retaliates Against Mr. Seals by Using a Flawed Interpretation of the County Pension Plan Act to Revoke Mr. Seals' Pension Payments ......................9

F. Procedural History in the District Court...........................................11

ARGUMENT ...................................................................................12

A. Defendants' First Two Arguments Are Not Appealable. ..................................12

B. Even if the Lower Court Did Grant Summary Judgment to Mr. Seals, It Did Not Abuse its Discretion in Doing So; Defendant Had Adequate Notice and Was Not Prejudiced. ..............................................................14

C. The District Court Made Correct Rulings on Mr. Seals' First Amendment Protected-Speech Retaliation Claim....................................................18

a. Mr. Seals Engaged in Protected Speech ......................................19

i

i. The *Pickering* Balancing Test is Resolved in Mr. Seals' Favor .................24

b. WCERS Subjected Mr. Seals to an Adverse Action ....................................26

c. The District Court Rightfully Asked the Jury to Decide Causation.............29

D. The District Court Was Correct Not to Rule as a Matter of Law that Mr. Seals' New Job was Subject to the 1000 Hour Rule. ......................................................30

E. WCERS Does Not Have Standing to Dispute the District Court's Grant of Wayne County's Motion for Summary Judgment. ................................................34

F. The District Court's Jury Instructions Were Correct. ......................................36

a. Defendant Agreed to Jury Instruction 17 and Fails to Support its Argument that This Instruction was Deficient. ..................................................................37

b. The District Court's Jury Instructions on Causation Accurately Stated the Law of the Sixth Circuit. ..........................................................................................38

c. The district court's rulings on jury instructions related to damages were within its discretion. ........................................................................................................41

CONCLUSION ........................................................................................................42

CERTIFICATE OF COMPLIANCE.........................................................................43

CERTIFICATE OF SERVICE .................................................................................43

ADDENDUM ...........................................................................................................44

# TABLE OF AUTHORITIES

## Cases

*Advanced Concrete Tools, Inc. v. Beach*, 525 F. App'x 317, 319 (6th Cir. 2013) ...15

*AmTote Int'l Inc. v. Kentucky Downs, LLC,* No. 1:15-CV-0047-GNS, 2017 WL 6329874, at *3 (W.D. Ky. Dec. 11, 2017) ............................................................35

*Aqua-Chem, Inc. v. Bariven, S.A.*, No. 3:16-CV-553, 2017 WL 10379636, at *4 (E.D. Tenn. Aug. 17, 2017).................................................................................35

*Arban v. W. Pub. Corp.*, 345 F.3d 390, 404 (6th Cir. 2003) ...................................37

*Aubin Indus., Inc. v. Smith*, 321 Fed. App'x. 422, 423 (6th Cir. 2008) ..................15

*Barrow v. City of Hillview, Kentucky,* 775 F. App'x 801, 811 (6th Cir. 2019)  19, 25, 26

*Benison v. Ross,* 765 F.3d 649, 660 (6th Cir. 2014) ...............................................27

*Bonnell v. Lorenzo*, 241 F.3d 800, 809-810 (6th Cir.), *cert. denied*, 534 U.S. 951 (2001).....................................................................................................................19

*Boos v. Barry*, 485 U.S. 312, 322 (1988)...............................................................21

*Buddenberg v. Weisdack*, 939 F.3d 732, 740 (6th Cir. 2019)................................27

*Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1,* 131 F.3d 564, 576 (6th Cir.1997) .................................................................................................................20

*Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 710 (6th Cir. 2007) ....................27

*Cohen v. California*, 403 U.S. 15, 20 (1971) ..........................................................21

*Connick v. Myers*, 461 U.S. 138, 143 (1983)..........................................................16

*Dignan v. Michigan Pub. Sch. Employees Ret. Bd.*, 253 Mich. App. 571, 576 (2002).....................................................................................................................32

*Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 295 (6th Cir. 2012)............ 19, 27

*e.g., Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 824 F. App'x 360, 367 (6th Cir. 2020)...............................................................................................35

*Ealy v. City of Dayton*, 103 F.3d 129 (6th Cir. 1996) .............................................42

*Excel Energy, Inc. v. Cannelton Sales Co*., 246 F. App'x 953, 959 (6th Cir. 2007) ............................................................................... 14, 15, 16, 17

*Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004) ............................ 18, 20, 22, 25

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 726 (6th Cir. 2010) .................28

*Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006).....................................................20

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 543 (6th Cir. 2012), ...........20

*Hurt v. Com. Energy, Inc*., 973 F.3d 509, 523 (6th Cir. 2020)................................36

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988)....................................21

*Iron Workers Loc. 25 Pension Fund v. Watson Wyatt & Co.,* No. 04-CV-40243, 2009 WL 3698562, at *1 (E.D. Mich. Nov. 4, 2009) ...........................................35

*Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990).......................vii, xi, xii, 12

*Jocke v. City of Medina, Ohio*, No. 22-3954, 2023 WL 5167326, at *7 (6th Cir. Aug. 11, 2023) ....................................................................................................40

Jones v. Consol. Rail Corp., 800 F.2d 590, 592 (6th Cir. 1986) .............................41

*Jones v. Federated Fin. Reserve Corp.,* 144 F.3d 961, 966 (6th Cir.1998) ...........37

*Kindle v. City of Jeffersontown, Ky*., 374 F. App'x 562, 568 (6th Cir. 2010)..........20

*Lawless v. Muskingum Cnty., Ohio*, 36 F. App'x 192, 193 (6th Cir. 2002).............36

*Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003)...........................................18

*Lemaster v. Lawrence Cnty., Kentucky*, 65 F.4th 302 (6th Cir. 2023) ............. 38, 39

*Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) ...............................................18

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 114 (S.D.N.Y. 2010) ....................................................................................................35

*Mantin v. Broad. Music, Inc*., 248 F.2d 530, 531 (9th Cir. 1957)...........................35

*McCurdy v. Montgomery Cnty.,* 240 F.3d 512, 520 (6th Cir. 2001)..........................21

*McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ........................................13

*Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994) ..........................41

*New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964)....................................21

*Nieves v. Bartlett*, 126 S. Ct. 1715 (2019) .............................................................38

*Nolan v. Memphis City Schs.*, 589 F.3d 257, 273 (6th Cir. 2009)...........................38

*Paige v. Coyner*, 614 F.3d 273, 282 (6th Cir. 2010) ...............................................29

*People v. Freedland*, 308 Mich. 449, 457 (1944) ...................................................32

*Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) ..............................................24

*Rudd v. City of Norton Shores*, No. 22-1229, 2023 WL 3886404, at *8 (6th Cir. June 8, 2023)..............................................................................................................39

*See v. City of Elyria,* 502 F.3d 484, 492 (6th Cir. 2007) ..........................................22

*Shohadaee v. Metro. Gov't of Nashville & Davidson Cnty.*, 150 F. App'x 402, 404 (6th Cir. 2005)................................................................................. 13, 14, 40

*Somberg v. Utica Cmty. Schs.*, 908 F.3d 162 (6th Cir. 2018)...................................32

*Stackpole Int'l Engineered Prod., Ltd. v. Angstrom Auto. Grp.*, LLC, 52 F.4th 274, 286 (6th Cir. 2022)........................................................................................38

*Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999)........................................18

*United States v. Blanchard*, 618 F.3d 562, 571 (6th Cir. 2010) ..............................36

*Virostek v. Liberty Twp. Police Dep't/Trustees*, 14 F. App'x 493, 509 (6th Cir. 2001) ........................................................................................................................37

*Weeks v. Angelone,* 528 U.S. 225, 234 (2000).........................................................37

*Westmoreland v. Sutherland*, 662 F.3d 714, 719, 722 (6th Cir. 2011) ............. 20, 22

**Statutes**

M.C.L. §45.41 ..........................................................................................................33

M.C.L. 46.12a(28)(b)(i) ............................................................................................1

**Rules**

Fed. R. App. 34(a) .................................................................................v

Fed. R. App. P. 32 ................................................................................43

Fed. R. App. P. 32(f) ...........................................................................43

Fed. R. Civ. P. 51 ................................................................................37

Local Rule 34(a) ....................................................................................v

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 34(a) and Local Rule 34(a) of the Sixth Circuit Court of Appeals, Plaintiff-Appellee Dwayne Seals requests oral argument in this matter. Plaintiff-Appellee believes that oral argument would assist the Court in understanding the arguments presented on appeal. This case involves an extensive record, a motion for summary judgment, multiple motions in limine, and a jury trial. This appeal raises an important question about the burden of proof in First Amendment retaliation cases. Plaintiff-Appellee believes oral argument would help the Court understand the lengthy procedural history and relevant facts of the case.

## STATEMENT OF JURISDICTION

Plaintiff-Appellee agrees with Defendant-Appellant's statement of jurisdiction, except to the extent that the district court's denial of Defendant-Appellant's motion for summary judgment is not appealable following a jury verdict against Defendant-Appellant pursuant to *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990).

## STATEMENT OF ISSUES

1.  Whether the district court's denial of WCERS' motion for summary judgment is appealable.

2.  Whether the district court's denial of WCERS' motion for summary judgment can now be recharacterized as an appealable *sua sponte* grant of summary judgment to Mr. Seals.

3.  If so, whether such a *sua sponte* grant of summary judgment was an abuse of discretion.

4.  If so, whether Defendant-Appellant was prejudiced.

5.  Whether the district court applied the correct standard of review in determining that WCERS' decision to suspend Mr. Seals' pension was not entitled to deference because it was not "supported by competent, material evidence on the whole record; was arbitrary or capricious; was clearly an abuse of discretion; or was otherwise affected by a substantial and material error of law."

6.  Whether the district court's jury instructions were misleading or gave the jury an inadequate understanding of the law.

## STATEMENT OF THE CASE

At issue in this First Amendment retaliation case is Plaintiff-Appellee Dwayne Seals' outspoken criticism regarding Defendant-Appellant's pension policies and a perceived shortchanging of Wayne County retirees' pensions. The case was never about the underlying pension calculations or the underlying analysis of Mr. Seals' eligibility to receive his pension. It is about the evidence that Defendant-Appellant intentionally retaliated against Mr. Seals by revoking his pension payments as punishment for his commentary in direct violation of his First Amendment rights.

On July 29, 2019, Mr. Seals, a retiree who returned to work for the Wayne County Clerk's office, engaged in speech protected by the First Amendment by participating in public comment at a meeting of the Wayne County Employees Retirement Commission ("WCERS"). Mr. Seals alleged that WCERS was "cheating" retirees by miscalculating their pension payments. He requested an independent review of the calculations. This angered the Retirement Commission. On September 30, 2019, WCERS informed Mr. Seals that they stood by their calculations – and authorized their counsel to "investigate" whether Michigan's County Pension Plan Act could be used to deprive Mr. Seals of his pension payments entirely, so that he would then stop disputing the calculation. During the closed session, board members stated with forceful satisfaction: "That will keep him quiet."

x

After the September 30 meeting, Mr. Seals engaged in additional protected speech. On October 1, WCERS, through counsel, sent Mr. Seals correspondence directly referencing his July 29 and September 30 statements and threatening to sue him for defamation if he continued to make such statements. The threats did not work, as Mr. Seals engaged in similar speech on October 28 and 31, 2019. So, on November 1, WCERS' attorney began an investigation into whether Michigan's County Pension Plan Act could be used to take away Mr. Seals' pension payments in retaliation. Over the next few days, he confirmed a common understanding that Mr. Seals was eligible to receive his pension. But WCERS' attorney then produced his own opinion, which the lower court found to be deeply analytically flawed, claiming that Mr. Seals was actually not eligible to work full-time and receive his pension payments under the Act. Instead, Defendant-Appellant wrongly concluded, Mr. Seals' pension payments had to be stopped once he had worked a total of 1000 hours. Legal cover in hand, WCERS suspended Mr. Seals' pension payments on February 24, 2020, after he had worked 1000 hours.

Mr. Seals filed his First Amendment retaliation case in April 2020. Over the course of the litigation, two different district court judges made numerous rulings regarding the three essential elements of Mr. Seals' claim. The jury returned a verdict in favor of Mr. Seals on September 29, 2023.

WCERS now wrongfully attempts to appeal several of the district court's rulings, primarily its denial of WCERS' motion for summary judgment, which is not appealable pursuant to *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990).

## SUMMARY OF THE ARGUMENT

The district court did not err in its denial of Defendant-Appellant's motion for summary judgment. At that stage, Plaintiff-Appellee produced sufficient evidence for a jury to find in his favor on all three elements of his First Amendment retaliation claim – which a jury later did. The court's denial of summary judgment is not appealable under *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990). WCERS now claims that the district court granted *sua sponte* summary judgment in favor of Mr. Seals on the first two elements of his claim. This did not happen. WCERS' mischaracterization of the district court's decision is incorrect. But even if it were correct, the district court would have been within its discretion to grant *sua sponte* summary judgment to Mr. Seals, as WCERS had more than adequate notice and opportunity to argue prior to any such grant and so was not prejudiced.

Mr. Seals produced sufficient evidence for the court, and the jury, to conclude that his speech – challenging what he believed to be incorrectly calculated pensions for all Wayne County retirees – was "on a matter of public concern" for purposes of First Amendment protection. WCERS now claims that Mr. Seals' speech was defamatory, but it never brought a defamation claim and cannot substantiate this claim now. Mr. Seals was never required to prove that the content of his speech was true in order for it to merit First Amendment protection.

xiii

As to the second element of Mr. Seals' claim, the district court properly denied WCERS' motion for summary judgment as to an adverse action, and again, this is not an appealable decision. The district court did not *sua sponte* grant summary judgment to Mr. Seals. But even if it had, it would not have abused its discretion in doing so. WCERS had plenty of notice and an opportunity to respond, as it was the party that filed a motion for summary judgment on the issue in the first place. Defendant's continued insistence that it could not have committed an adverse action if it was required to do so by law is unsupported, both by the severely flawed underlying analysis of said law and by the fact that its own executive director testified that WCERS was not required to do what its lawyers said. The district court properly applied the correct standard of review to the underlying analysis created by WCERS' counsel and found that it was so deeply flawed that it did not require blind deference.

The district court's rulings on various jury instructions related to causation and damages were legally correct and do not warrant a reversal of the jury verdict. WCERS cannot show that the jury instructions were misleading or failed to give the jury an accurate overview of the law of this circuit.

xiv

## STATEMENT OF FACTS

### A. Background: Mr. Seals' Retirement and Return to Employment with the Wayne County Register of Deeds

Plaintiff-Appellee Dwayne Seals is a dedicated public servant who worked for the Wayne County Commission for eleven years before retiring. (Trial Transcript Vol. 1, RE 130, PageID.3890) He was able to retire and begin receiving pension benefits at approximately age 49 by purchasing additional years of eligibility pursuant to the terms of Wayne County's benefit plan. After Mr. Seals retired, he began drawing upon his earned pension of $5400 per month. (Trial Transcript Vol. 1, RE 130, PageID.3890) Mr. Seals came out of retirement in 2017 to serve as the Deputy Register of Deeds/Chief Financial Officer under Mr. Bernard Youngblood. (Brief in Opposition to MSJ, RE 58, PageID.2280; Trial Transcript Vol. 1, RE 130, PageID.3891) Mr. Seals learned that he could return to work full-time and continue to receive his pension benefits pursuant to the County Pension Plan Act, M.C.L. 46.12a(28)(b)(i)(A), (B), and (C). (Brief in Opposition to MSJ, RE 58, PageID.2280-2281) To summarize briefly, the statutes provide that a retiree returning to work may only work up to 1000 hours per year for the public entity from which he retired (the "1000-hour rule"); but if he returns to work as an elected or appointed official after retirement (provided he was not elected or appointed at the time of retirement), he is eligible for an exemption to the "1000-hour rule" and can continue receiving his

pension payments even after working more than 1000 hours. As an appointed deputy to Mr. Youngblood, Mr. Seals was exempt from the 1000-hour rule.

During his time at the Register of Deeds' Office, Mr. Seals reported to the Wayne County Employees' Retirement System ("WCERS") Board members and Executive Director concerns that his pension had been calculated incorrectly, resulting in an underpayment, and that if all Wayne County retirees' pensions had been calculated in the same manner, then all retirees were being underpaid. In April of 2017, Mr. Youngblood told Mr. Seals to drop his complaints, telling him "you need to stop…I'm in the middle of my pension argument too, and this may not work out good..." (Seals Dep., RE 58-2, PageID.2328-2329; Email, RE 58-10, PageID.2421) Heeding his supervisor's advice, Mr. Seals stopped raising his concerns in 2017; did not raise them again in 2018; and did not renew his complaints again until late July of 2019. (Seals Dep, RE 58-2, PageID.2325) That is when the relevant timeline of this case begins.

## B. Mr. Seals' Employment with the Wayne County Clerk

Mr. Seals left the Register of Deeds office in May of 2019. (Trial Transcript Vol. 1, RE 130, PageID.3892) In July 2019, he returned to work again when the Wayne County Clerk, Cathy Garrett, appointed him as her Deputy Clerk/Financial Officer. (Trial Transcript Vol. 1, RE 130, PageID.3893) Ms. Garrett had checked with the personnel/human resources department and notified them that Mr. Seals

2

would be taking the job in order to make sure he could still receive his pension without violating any policy. (Trial Transcript Vol. 2, RE 131, PageID.3962) Ms. Garrett lawfully appointed Mr. Seals as an appointed deputy so she could expand upon his job duties. (Trial Transcript Vol.1, RE 134 PageID.4217-4218) She followed her typical hiring process to ensure that, as when he was the Deputy Register of Deeds, Mr. Seals would be able to work full-time as a Deputy County Clerk as a reemployed retiree and retain his benefits. (Trial Transcript Vol. 1., RE 134, PageID.4222-4223) Once Ms. Garrett confirmed that he would be able to work full-time and receive his pension, he was hired. (Trial Transcript Vol. 1., RE 134, PageID.4223)

Mr. Seals began working full-time and continued to receive his pension benefits, just as he had at the Register of Deeds. (Trial Transcript Vol. 1, RE 130, PageID.3893) No one alerted him to any issue with his pension. (Trial Transcript Vol. 1, RE 130, PageID.3893)

### C. Mr. Seals Begins Engaging in Protected Speech in July 2019, Angering the Retirement Commission

Since Mr. Seals was no longer employed by the Register of Deeds, he was able to freely raise his concerns about the pension calculations again. For the first time in over two years, Mr. Seals did so by attending the WCERS meeting in July 2019. There, he stated during the public comment portion of the meeting that he believed WCERS was 'shorting' him, and all the Wayne County retirees, their full

pension amount. (Trial Transcript Vol. 1, RE 130, PageID.3894) He claimed that "if they were not going to do an independent review [sic], that they were, in essence, cheating myself and other retirees out of their pension." (Trial Transcript Vol. 1, RE 130, PageID.3897) Mr. Seals said that while it didn't really matter that he was only losing $38 a month, some retirees lived on much smaller pensions, and the difference in their pension could have a real impact on their lives. (Trial Transcript Vol. 1, RE 130, PageID.3897) He said WCERS was "cheating retirees, individuals who had worked for their money; they were cheating them out of their earned pension." (Trial Transcript Vol. 2, RE. 131, PageID.3949) He asked for an independent outside review of the pension calculations and said that he would accept the results and drop his complaints if an independent review occurred. (Trial Transcript Vol. 1, RE 130, PageID.3896)

Mr. Seals' accusations infuriated the members of the Retirement Commission. The vast majority ("90%") of the Commissioners were upset with Mr. Seals' comments. (Yee Deposition Transcript, RE 58-5, PageID.2383) Board member Tom Yee testified that "nobody likes to hear that…you're not doing your job, you're cheating people." (Trial Transcript Vol. 1, RE 129, PageID.3774) Mr. Seals' comments "didn't make anybody happy." (Trial Transcript Vol. 1, RE 129, PageID.3769) The board reached what Mr. Yee called the peak of their "dissatisfaction" with Mr. Seals. (Trial Transcript Vol. 1, RE 129, PageID.3775)

At its September 30, 2019 meeting, WCERS voted to send Mr. Seals its findings that his and the other retirees' pensions had been properly calculated. (Minutes from WCERS 9/30/19 Meeting, RE 58-15, PageID.2440). Because of their "dissatisfaction" with Mr. Seals' speech, WCERS also, in closed session, voted to do two additional things: authorize its counsel to send Mr. Seals a letter aggressively threatening litigation against him if he continued to dispute the pension calculations, and investigate Mr. Seals' eligibility to continue to receive his pension payments for the explicit purpose of retaliating against him for his criticisms. Specifically, they asked their counsel to investigate whether the 1000-hour rule could be used to take away Mr. Seals' entire pension. (Trial Transcript Vol. 1, RE 129, PageID.3776) If he kept disputing the calculations, they reasoned, they would just take away his payments altogether so he would no longer have anything to complain about. Board member Betty Misuraca stated with satisfaction: "That will keep him quiet," while making a forceful pointing motion with two fingers. (Trial Transcript Vol I, RE 129, PageID.3780, 3792-3) She asked fellow board member Tom Yee to go to Mr. Seals and stop him from speaking at public comment, threatening to end his career if Mr. Yee didn't do what she asked. (Trial Transcript Vol. 1, RE 129, PageID.3799) Board member Hugh Macdonald confirmed that Betty Misuraca was frustrated by Mr. Seals' criticisms. (Trial Transcript Vol. 3, RE 132, PageID.4086) He also confirmed that WCERS voted to authorize the letter threatening to sue Mr. Seals for defamation

if he didn't cease his complaints because they wanted any further communications to go through their attorneys. (Trial Transcript Vol. 3, RE 132, PageID.4097) Rob Grden, WCERS' executive director, said that Mr. Seals' "lies" were not welcome at public comment. In short, they no longer wanted to hear what Mr. Seals had to say, though his comments – sharp criticism of public officials – were precisely the type of speech protected by the First Amendment.

Realizing that the board intended to punish Mr. Seals for his speech, Mr. Yee recused himself, describing the situation as a "crisis of conscience":

> A: Well, I thought we were talking about calculations, then the matter went into taking all the money away and I wasn't going to be a part of that.
> Q: Okay. What do you mean by 'then the matter went into taking all the money away"?
> A: Well, there was a motion to investigate whether or not he had violated any of the – how do I say this?... His eligibility based upon, I believe, the 1000-hour rule, the feasibility of whether or not that could be used to take his pension away. …
> Q: And when did you recuse yourself?
> A: At that very point when they voted. It wasn't a vote to do it, it was a vote to have, I believe, corporation counsel investigate that and I didn't want to be part of that.
> Q: Why didn't you want to be part of that?
> A: …I'm here to help people. I don't believe – it's a crisis of conscience… I don't want to be part of taking anybody's money away."
> (Yee Dep Transcript, RE 58-5, PageID.2376-2380)

Mr. Yee was the only board member to object to WCERS' retaliation.

**D. WCERS Threatens to Silence Mr. Seals, But He Continues Speaking**

After this meeting, Mr. Seals learned that the "independent reviewer" who confirmed the pension calculations were done correctly had been a WCERS employee. He sent WCERS an email: "I will not let this issue go away quietly! Retirees need to know…no quiet settlements will be accepted… I look forward to joining and attending the next Retirees Association [meeting]." (Trial Transcript Vol. 2, RE 131,PageID.3907; Email, RE 58-13, PageID.2433) He wanted "to let them know that this wasn't really – it wasn't about me, it's about all the other retirees, and I don't want a quiet settlement, I want to make sure they know about it." (Trial Transcript Vol. 2, RE 131, PageID.3907) Mr. Seals' efforts were explicitly made for the purpose of correcting what he perceived to be a widespread injustice affecting hundreds of retirees and potentially implicating wrongdoing by the Wayne County government and WCERS. By "no quiet settlements will be accepted", he was saying: "[J]ust because settlement with me is not [an option], these are other retirees that are being affected by this, too… whatever we have has to work out for all retirees, not just for me. You can't just offer me a settlement. This is for all the retirees. You're cheating them too. I feel strongly about that…I was going to take whatever necessary within the legal means that I'm allowed to make sure that other retirees are not being cheated any longer." (Seals Dep, RE 58-2, PageID.2326)

In response, WCERS sent Mr. Seals the letter specifically referencing his protected speech and threatening to sue him if he continued speaking (Trial

Transcript Vol. 1, RE 130, PageID.3897-3898):

> *As you are aware, at its July 29, 2019, regular meeting, you addressed the Retirement Commission of the Wayne County Employees Retirement System, during the public comment portion of the meeting… Following the Retirement Commission's meeting, you sent email communications to the Retirement Commission and staff, and stated that you believed you were being treated unfairly… Further, please be advised that should you decide to pursue these baseless claims against our client, we will respond by not only seeking the dismissal of your complaint with prejudice, but also seeking attorneys' fees and sanctions against you for bringing a frivolous lawsuit. Should you continue to make libelous claims and defamatory statements about our client, we may be forced to seek other appropriate legal remedies as well.*

(Correspondence to Seals, RE 58-14, PageID.2436-2438) Mr. Seals was afraid WCERS was going to sue him, but he continued to speak up for the retirees he believed were unfairly losing money: "[O]ne of the things I've learned over the years I've been working, is always trying to assist or help those who are not able to help themselves… I was speaking of a situation that was affecting retirees, individuals who actually needed their retirement that they earned." (Trial Transcript Vol. 2, RE 131, PageID.3911)

On October 28, 2019, Mr. Seals went to public comment again and asked WCERS to have a truly independent party review the calculations. He "encouraged them that if they didn't, that retirees would be shorted out of their earned pensions, and please to take a look at this issue again." (Trial Transcript Vol. 2, RE 131, PageID.3912-3913) Later that evening, he sent an email to WCERS stating that he was

8

*concerned about the hundred[s] of retirees that Mr. Grden [Executive Director] is cheating… Twenty-five dollars for someone with a $12,000 pension could mean getting needed medication or not getting it for the month… [this] may cause a real hardship on some of the retirees that you were elected to represent. Because most of the lower paid retirees are from a particular demographic group, it may give the appearance that you and Rob are neglecting them because of who they are and underrepresented groups from which they are a part. I hope that is not the case here… I plan to be working with the retirees to make sure that they understand your role in this illegal shortening of their retirement distributions.* (Plaintiff-Appellee's Trial Exhibit G)[1]

On October 31, 2019, he sent another email stating: "I know the $38 a month that I'm losing is a very small amount for me, but if you look at the loss to retirees in their pension benefits, it could be as much as $200- to $300,000 a year." (Trial Transcript, RE 131, PageID.3915; Email, RE 58-16, PageID.2442-2443)

### E. Defendant Retaliates Against Mr. Seals by Using a Flawed Interpretation of the County Pension Plan Act to Revoke Mr. Seals' Pension Payments

Meanwhile, Drew Van de Grift, then-counsel to WCERS, had been tasked with investigating whether the County Pension Plan Act could be used to take Mr. Seals' pension payments away completely and "keep him quiet". Three different Wayne County employees – Personnel/Human Resources Administrator Beatrice Golden, Department Manager of Retirement Benefits Felicia Hollis, and Director of Personnel/Human Resources Steve Mahlin – confirmed that Mr. Seals, as an official appointed by the Clerk, was exempt from the 1000-hour rule. Ms. Golden said that

---

[1] *See* Exhibit attached to Plaintiff-Appellee's Appendix in Support of his Brief.

"[she] understood it as he was exempt since he was rehired under another elected official." Ms. Hollis agreed: "After reviewing, I think he would still be exempt based on the position. He was appointed by an elected official and serves at the pleasure of the appointing authority (County Clerk) etc." And Mr. Mahlin concurred as well: "[W]e believe that Dwayne Seals should continue to be exempt from the 1000-hour rule. We see it as consistent with Section III 1 (C) of the policy, as he is returning into an "appointed county official" job for another elected official." (Email thread, RE 58-17, PageID.2445-2446) All parties agreed: as an appointed official, Mr. Seals was eligible to work full-time and continue receiving his pension payments.

Despite the clear answer, Mr. Van de Grift set out to justify WCERS' foregone conclusion to the contrary with his own deeply flawed analysis. He apparently completely ignored the three Wayne County employees' confirmations. He looked at a former employee's job description and concluded that Mr. Seals held the same job responsibilities as a non-appointed civil servant, but there was another job description for Mr. Seals' position that he never even looked at. Mr. Van de Grift did not bother to speak to Mr. Seals or Clerk Cathy Garrett to find out what the Deputy County Clerk/Financial Officer position actually entailed and whether it was different from the non-appointed civil servant position. (Trial Transcript Vol. 2, RE 131, PageID.3968) If he had, he would have learned from Ms. Garrett that she had appointed Mr. Seals as a Deputy Clerk so that she could give him additional job

duties, more than what the civil servant position held. (Trial Transcript Vol. 1, RE 134, PageID.4217-4218) He created a memorandum stating that contrary to what everyone else had told him, Mr. Seals' Deputy County Clerk/Financial Officer position was *not* exempt from the 1000-hour rule. Mr. Van de Grift delivered his conclusion to WCERS at their December 2019 meeting. (Meeting minutes, RE 52-2) Once they had legal cover, WCERS voted to suspend Mr. Seals' pension payments as soon as he had worked 1000 hours, in February 2020. It didn't matter that Mr. Van de Grift's surface-level "analysis" was deeply flawed. WCERS just needed a basis for its retaliatory agenda. Defendant-Appellant repeatedly claims it was just following the law – or its counsel's interpretation of it – but even Mr. Grden testified that WCERS did not have to do what its lawyers said. (Trial Transcript Vol. 3, RE 132, PageID.4171)

As a result, Mr. Seals lost approximately $178,000 in missed pension payments between February 2020 and November 2022.

### F.  Procedural History in the District Court

Mr. Seals filed his lawsuit alleging violations of his First Amendment free speech rights in April 2020. Defendant filed a motion to dismiss in July 2020, arguing that Mr. Seals had not adequately pled his First Amendment retaliation claim. The Honorable Robert H. Cleland largely denied these motions. (Opinion and Order, RE 22) After discovery, Defendant filed a motion for summary judgment.

(WCERS and Grden's Motion for Summary Judgment, RE 52) Judge Cleland granted former defendant Wayne County's motion but denied Defendant-Appellant WCERS' motion. (Opinion and Order, RE 64) WCERS filed a motion for reconsideration. (Mtn. for Reconsideration, RE 66) The district court denied that motion as well. (Opinion and Order, RE 70) In July 2023, the case was reassigned to the Honorable Sean F. Cox and set for trial.

Before and during trial, Judge Cox made several rulings on motions in limine and jury instructions. On September 29, 2023, the jury entered a verdict in favor of Mr. Seals, and the court entered judgment in his favor. (Jury Verdict Form, RE 126; Judgment-Jury Verdict, RE 128) After trial, Defendant-Appellant filed its renewed motion for judgment as a matter of law or for a new trial. (WCER's Mtn. for JMOL/New Trial, RE 133) The district court denied that motion. (Opinion and Order, RE 143)

## ARGUMENT

### A. Defendants' First Two Arguments Are Not Appealable.

As a threshold matter, "where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990). The *Jarrett* court, agreeing with the Ninth and Federal Circuits, declined "to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an

appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial." *Id* at n.1. Perhaps this is why Defendant-Appellant has now tried to characterize its appeal as one of the district court's "*sua sponte* grant of summary judgment to Mr. Seals" – an event that never happened. As Defendant-Appellant notes in its own brief, the district court never entered summary judgment in favor of Mr. Seals. It merely denied WCERS' motion for summary judgment. That decision is not appealable under *Jarrett*.

Now that this fatal deficiency has been pointed out, Defendant-Appellant may try to claim that its arguments fall under the narrow exception delineated in *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) where "the issue is purely one of law." But this exception does not save Defendant-Appellant's argument on appeal. That is because of the crucial disputed facts at the heart of this case, particularly those establishing WCERS' retaliatory animus – facts that Defendant-Appellant all but ignored at the summary judgment stage and continues to sidestep now. *See Shohadaee v. Metro. Gov't of Nashville & Davidson Cnty.*, 150 F. App'x 402, 403 (6th Cir. 2005). In *Shohadaee*, the plaintiff appealed the lower court's denial of her motion for summary judgment on the question of whether she had been subjected to an adverse action. This Court held:

> *In this instance, however, Plaintiff cannot take advantage of the exception to the traditional rule that the denial of a motion for summary judgment may not be reviewed on appeal. Even aside from the alleged legal question whether Plaintiff was subjected to an adverse*

13

*employment action, several fact disputes were implicated by Plaintiff's motion for summary judgment – the most important being whether Dr. Ross made the discriminatory comments at issue. At any rate…this fact dispute would have precluded her from obtaining relief on appeal given the customary rule that we must give the winner of a jury verdict the benefit of the doubt on all factual disputes presented to the jury.*

*Shohadaee* at 403-404. The same circumstances are present here, and the same result is mandated: as WCERS itself now admits, factual disputes were implicated by its motion for summary judgment that preclude it from obtaining post-verdict relief at the appellate stage. Like in *Shohadaee,* too, the main factual dispute was whether Defendant made retaliatory/discriminatory comments. Plaintiff presented evidence of these retaliatory comments at trial, and the jury found in his favor. Try as it might, WCERS cannot escape these facts. It should not be permitted to appeal the lower court's denial of its motion for summary judgment after a jury verdict.

**B. Even if the Lower Court Did Grant Summary Judgment to Mr. Seals, It Did Not Abuse its Discretion in Doing So; Defendant Had Adequate Notice and Was Not Prejudiced.**

Even if this Court did agree with WCERS' mischaracterization of the lower court's denial of summary judgment, Defendant's arguments would still fail. In other words, assuming *arguendo* that the lower court *had* granted summary judgment in favor of Mr. Seals, that decision should be upheld.

While granting summary judgment *sua sponte* may be discouraged, it is not prohibited per se. *Excel Energy, Inc. v. Cannelton Sales Co*., 246 F. App'x 953, 959 (6th Cir. 2007). A *sua sponte* grant of summary judgment is reviewed for abuse of

14

discretion; a finding of abuse of discretion is then subject to a harmless-error analysis, in which the aggrieved party must demonstrate prejudice in order to prevail. *Advanced Concrete Tools, Inc. v. Beach*, 525 F. App'x 317, 319 (6th Cir. 2013). Here, the district court did not abuse its discretion, as it acted appropriately by ruling on issues of which Defendant had more than adequate notice. And Defendant was not prejudiced, as it had ample opportunity to advance its arguments and failed multiple times to do so persuasively.

"[W]here the district court has allegedly granted summary judgment *sua sponte*, this Court looks to the totality of proceedings before the district court to determine whether the losing party had sufficient notice that summary judgment could be granted against him." *Excel Energy, Inc.* at 960. Factors include what issues the parties focused on in their briefs; the factual materials the parties submitted to the court; whether the losing party itself had filed a motion for summary judgment; and whether the losing party addressed the claim in its arguments. *Excel Energy, Inc*. at 960 (collecting cases); *Aubin Indus., Inc. v. Smith*, 321 Fed. App'x. 422, 423 (6th Cir. 2008).

Here, Defendant's claim that it had insufficient notice is nothing short of absurd. Defendant knew perfectly well that the court was going to rule on the elements of Plaintiff's First Amendment retaliation claim because Defendant was the one who filed a motion for summary judgment (and before that, a motion to

dismiss) on that claim in the first place. It addressed each element of the claim in its brief and submitted a voluminous factual record in support of its motion. It then had additional opportunity to further discuss its arguments in a reply brief and then a motion for reconsideration. This is not a case where the lower court granted summary judgment *sua sponte* on grounds totally unbeknownst to the loser until it was too late. The district court did not grant summary judgment under circumstances that "deprived [WCERS] of any meaningful opportunity to offer argument to the district court." *Excel Energy, Inc*. at 962. It denied WCERS' motion for summary judgment on the first two elements of Mr. Seals' claim after considering both parties' full briefing and hundreds of pages of evidence.

A review of WCERS' motion for summary judgment shows that it had ample opportunity to offer its arguments to the district court. As to its contention that Mr. Seals' speech was unprotected, WCERS argued that "Plaintiff's harassment of the Retirement Commission and its staff for many years does not constitute constitutionally protected speech" (WCERS and Grden's MSJ, RE 52, PageID.988) and "Plaintiff's speech was not constitutionally protected and he cannot show that the speech involved 'matters of public concern' as set forth by the Supreme Court in *Connick v. Myers*, 461 U.S. 138, 143 (1983)" (WCERS and Grden's Motion for Summary Judgment, RE 52, PageID.989). The district court even acknowledged that WCERS could have acted differently, but "offered little to no substantively different

argument" and "chose to simply incorporate its argument from its motion to dismiss" on the issue. (Opinion and Order, RE 64, PageID.2664) WCERS similarly addressed the adverse-action element at RE 52, Page.ID.989-990: "Suspending Plaintiff's pension as required by state law was also not an "adverse" action taken against him, and thus Plaintiff cannot meet the second prong of the test." After Plaintiff submitted his response brief, Defendant had additional opportunity to further flesh out its arguments in a reply. It made its points and lost. WCERS' dissatisfaction with the outcome of this case simply does not support the conclusion that it had no notice or opportunity to give its deficient arguments. Defendant should not be permitted to take yet another bite at this proverbial apple now.

Even if there had somehow been insufficient notice, this Court has upheld the judgment of district courts where the losing party could not demonstrate prejudice. *Excel Energy, Inc*. at 960 (collecting cases). Defendant cannot do so here, as it cannot show it would have produced new favorable arguments or evidence had it received additional notice and further opportunity to respond. Defendant "points to no evidence that would have been necessary for the district court to reach an accurate determination on the merits, but which was not submitted to the district court." *Excel Energy, Inc.* at 961. It submitted all its evidence at the time: WCERS filed a voluminous record in support of its motion for summary judgment, including hundreds of pages of deposition testimony, affidavits, emails dating back nearly a

decade, and the full administrative record relating to the suspension of Mr. Seals' pension. The district court properly denied its motion for summary judgment after reviewing the evidence. *Excel Energy, Inc*. at 961 (no abuse of discretion on grant of summary judgment where parties produced hundreds of pages of evidence to district court). Defendant made its arguments repeatedly and supported them with extensive discovery. It was not prejudiced by the district court's denial of its summary judgment motion, which it now mischaracterizes as an appealable *sua sponte* grant of summary judgment.

Even if the court had granted summary judgment on the first two elements of Mr. Seals' claim, that decision would have been correct, as detailed below.

## C. The District Court Made Correct Rulings on Mr. Seals' First Amendment Protected-Speech Retaliation Claim

Mr. Seals established each element of his First Amendment retaliation claim, i.e., that he engaged in constitutionally protected activity; he was subjected to adverse action or deprived of some benefit; and his protected speech was a "substantial" or "motivating factor" in the adverse action. *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004) (citing *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003)). In other words, he was required to (and did) prove that "the adverse action was motivated at least in part by the protected conduct." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999)). WCERS continues to dispute the first two elements because it cannot avoid

18

the evidence of the third: that its members decided to take Mr. Seals' pension away specifically to stop him from complaining about it at all.

### a. Mr. Seals Engaged in Protected Speech

The first step of the inquiry is to determine whether the speech is protected, i.e., whether the speech touches on a matter of public concern. The Supreme Court has defined "public concern" as speech "relating to any matter of political, social, or other concern to the community." *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 295 (6th Cir. 2012) (internal citations omitted). An employee's speech "involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Barrow v. City of Hillview, Kentucky,* 775 F. App'x 801, 811 (6th Cir. 2019) (internal citation omitted). Whether the speech at issue involves a matter of public concern is a question of law for the court. *Bonnell v. Lorenzo*, 241 F.3d 800, 809-810 (6th Cir.), *cert. denied*, 534 U.S. 951 (2001).

Here, the district court ruled repeatedly and correctly that Mr. Seals' speech was on a matter of public concern. On July 29, September 30, October 28, and October 31, 2019, Mr. Seals raised his concerns that WCERS was wrongfully cheating him and all Wayne County retirees out of their correct pension amount. His speech was not just about his own pension – it was about his belief that WCERS,

whose members are elected officials, was shorting *all* retirees. First Amendment jurisprudence is clear that "[e]xposing governmental inefficiency and misconduct" and "the efficacy and operations of public agencies and allegations of misconduct by public officials" are matters of significant public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006); *Kindle v. City of Jeffersontown, Ky*., 374 F. App'x 562, 568 (6th Cir. 2010) (collecting cases). This Court has "gone so far as to say that public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law, when exposing graft and corruption, and when seeing that public funds are not purloined or wasted." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 543 (6th Cir. 2012), citing *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1,* 131 F.3d 564, 576 (6th Cir.1997) (alterations, citations, and internal quotation marks omitted). The pertinent inquiry is not why Mr. Seals spoke, but what he said. *Westmoreland v. Sutherland*, 662 F.3d 714, 719 (6th Cir. 2011), citing *Farhat v. Jopke* at 591. The "focus" of his speech was his concern about the mass shorting of all retirees' pensions.

WCERS claims that Mr. Seals' speech loses First Amendment protection because it was "defamatory." Notably, despite threats to do so, it has never tested this theory by actually filing a defamation claim against Mr. Seals. Without an actual defamation claim to rule on, this Court should not attempt to decide whether the speech at issue was defamatory. The cases cited by Defendant – from *Gertz* to *Fritz*

to *Farhat* – all involve situations where a *defendant* invoked First Amendment protection *against* a defamation claim – not a defendant seeking, as WCERS does, some sort of defamation defense against a First Amendment claim. Their logic is inapplicable here. The tone of Mr. Seals' critiques may have been harsh. But that does not take his speech outside the realm of First Amendment protection, which extends to sharp, vulgar, profane, and "profoundly offensive" speech. *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964); *Cohen v. California*, 403 U.S. 15, 20 (1971). That is because "in public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." *Boos v. Barry*, 485 U.S. 312, 322 (1988) (internal quotation marks omitted) (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988)). WCERS was clearly offended and insulted by Mr. Seals' claims that they were cheating retirees. But "since the day the ink dried on the Bill of Rights, the right of an American citizen to criticize public officials and policies has been central to the meaning of the First Amendment." *McCurdy v. Montgomery Cnty.,* 240 F.3d 512, 520 (6th Cir. 2001) (internal citation omitted). Mr. Seals' comments merited First Amendment protection.

WCERS similarly over-emphasizes its contention that Mr. Seals' comments were false, but as this court has unequivocally made clear, "a public employee is not required to prove the truth of his or her speech in order to secure the protections of

the First Amendment." *Farhat v. Jopke*, 370 F.3d 580, 591 (6th Cir. 2004). Even if Mr. Seals turned out to be wrong about the correct way to calculate a pension, he would still have had the right to talk about it. It "does not matter if the employee's suspicions were subsequently shown to be correct, as long as the statements were of public concern *and* not false statements deliberately or recklessly made." *See v. City of Elyria,* 502 F.3d 484, 492 (6th Cir. 2007). It is not the plaintiff's burden to prove that his statements were true, but the defendant's burden to prove that they were false *and* made with intentional or reckless disregard for the truth. *Westmoreland v. Sutherland*, 662 F.3d 714, 722 (6th Cir. 2011). Defendant never met that burden.

In *Westmoreland*, like here, the plaintiff made "highly critical" comments that Defendants alleged were "motivated by plaintiff's financial loss" communicating "nothing more than the quintessential employee beef" about incompetent management. The Sixth Circuit ruled that the comments involved matters of public concern. Then it considered competing arguments about the underlying truth of Plaintiff's commentary. The court held that the district court had been wrong to conclude that the plaintiff made intentionally or recklessly false statements where the plaintiff had presented evidence that he had reason to believe what he was saying was true. Defendants failed to establish that Plaintiff was being reckless with the truth or intentionally lying. *Westmoreland* at 722.

Similarly, here, WCERS failed to meet that burden (and cannot do so now). WCERS' claim that it would have provided evidence proving Mr. Seals' claims were false had the district court allowed it to do so is undercut by the fact that it *did* attempt to provide that evidence. It filed 30 lengthy exhibits to its motion for summary judgment in support of that argument. (Index, RE 52-1) (And again, WCERS now disputes the denial of that motion, which is unappealable under *Jarrett v. Epperly, supra,* anyway.) That motion, and the motion to dismiss (Wayne County's Motion to Dismiss, RE 13) spent extensive time outlining various statements made by Mr. Seals that WCERS disagreed with. And Mr. Seals presented evidence supporting the conclusion that he believed he was correct about the pension calculations. He testified about his educational background and extensive work experience in finance and accounting. This was the foundation of his belief in his methodology of the pension calculations. WCERS did not meet its burden to prove that Mr. Seals' complaints were made with intentional or reckless disregard for the truth. The district court correctly ruled that "Mr. Seals' mixed speech primarily concerned public matters." (Opinion and Order, RE 64, PageID.2665)

It should also be noted that in the cases where a public employee's speech is found to be a mere "employer-employee beef" regarding personal (or personnel) matters, not matters of public concern, the speech relates to the employee's own employment in some way. Here, that is not the case. WCERS was not Mr. Seals'

employer. Mr. Seals' speech had nothing to do with his employment at the Wayne County Clerk's office. Mr. Seals' boss, Clerk Cathy Garrett, testified that Mr. Seals "didn't [make his speech] on behalf of the county clerk's office" and that there was "no reflection on" her office. (Garrett Dep., RE 58-4, PageID.2370) She also confirmed that attending retirement commission meetings and speaking at public comment is Mr. Seals' "right as a retiree" and that she knows and approves Mr. Seals doing so during typical work hours. (Garrett Dep., RE 58-4, PageID.2371) Although he was a public employee at the time, his speech at issue here was made in his capacity as a retiree of Wayne County. His comments were not about any "beef" with "incompetent management" at his own job. So, this aspect of the "matter of public concern" inquiry is arguably beside the point. And again, this case has never truly been about the underlying pension calculations. It is about the evidence that Defendant-Appellant retaliated against Mr. Seals for daring to talk about them publicly.

### i. The *Pickering* Balancing Test is Resolved in Mr. Seals' Favor

If the speech is protected, then the court must balance the interests of the public employee as a citizen in commenting upon matters of public concern with the interest of the government in promoting the efficiency of the public services it performs through its employees. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

The purpose of the *Pickering* balancing test is to balance "the right of even a governmental employer to deal with disruption in the workplace." *Farhat v. Jopke*, 370 F.3d 580, 594 (6th Cir. 2004). Here, there was no such disruption. Again, Mr. Seals spoke to WCERS as a retiree regarding his and the other retirees' earned pensions, not as an employee regarding an internal employment matter. Mr. Seals' speech about WCERS shorting retirees' pensions had nothing to do with Mr. Seals' employment at the Clerk's office, and so cannot be written off as unprotected "speech made in an employment grievance, personnel dispute, or complaint regarding internal management." *Barrow v. City of Hillview, Kentucky*, 775 F. App'x 801, 811 (6th Cir. 2019). Defendant itself acknowledges that the government interest at stake has to do with "retention of a disruptive or unsatisfactory employee" and workplace-related factors such as discipline, impact on working relationships, and the performance of the speaker's duties. (Corrected Principal Brief of Defendant-Appellant, Document 31, Page 36-38) Here, Mr. Seals' speech had no bearing whatsoever on the operation of his workplace. Ms. Garrett confirmed that Mr. Seals works hard for the Clerk's office and gets his job done. His pension dispute did not impact the operations of his employer's office at all. (Trial Transcript Vol. 1, RE 134, PageID.4231) WCERS can point to no evidence in the record to the contrary.

Even if the *Pickering* balancing test applied where a public employee's speech occurs completely outside the context of his employment, WCERS similarly has no

25

evidence that Mr. Seals' complaints were "disruptive" to WCERS. (Corrected Principal Brief of Defendant-Appellant, Document 31,  Page 48) The speech at issue consisted of several comments given during the 'public comment' period of WCERS meetings and a handful of emails. There is no evidence at all that this disrupted WCERS operations.

Finally, "in cases involving allegations of official misconduct and public corruption, the employer's side of the *Pickering* scale is entirely empty." *Barrow v. City of Hillview, Kentucky*, 775 F. App'x 801, 814 (6th Cir. 2019) (citing *Lane v. Franks,* 573 U.S. 228 (2014)). This inquiry was correctly settled in favor of Mr. Seals when the Court denied WCERS' motion for summary judgment. There was no abuse of discretion or prejudice to WCERS.

### b.  WCERS Subjected Mr. Seals to an Adverse Action

The district court also correctly and within its discretion denied WCERS' motion for summary judgment as to the "adverse action" element of the First Amendment claim, and this decision cannot be appealed. But even if it were an appealable grant of summary judgment to Mr. Seals, it would similarly deserve to be upheld, as there was no abuse of discretion or prejudice.

As an initial matter, WCERS misleads the court when it characterizes the adverse action at issue as "a simple $38/month dispute over pension benefits." (Corrected Principal Brief of Defendant-Appellant, Document 31, Page 49) The

adverse actions at issue here culminated in the suspension of Mr. Seals' approximately $5400/month pension benefit altogether between February 2020 and November 2022, totaling $178,000 in lost payments. An "adverse action" is anything that would "chill or silence a person of ordinary firmness from future First Amendment activities. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 303 (6th Cir. 2012) (citation omitted). This includes a reduction in income. See *Buddenberg v. Weisdack*, 939 F.3d 732, 740 (6th Cir. 2019) (reduction in pay part of adverse action); *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 710 (6th Cir. 2007) (plaintiff "deprived of increased compensation" suffered adverse action); *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 303 (6th Cir. 2012) (a decrease in pay is an adverse employment action); *Benison v. Ross,* 765 F.3d 649, 660 (6th Cir. 2014) (penalties that impose financial burden on plaintiff are adverse actions). The district court correctly ruled that "there is no question that a $5400 reduction in monthly income – due to an employee's alleged protected speech – would be enough to silence an ordinary employee." (Opinion and Order, RE 22, PageID.768)

Additionally, as the Sixth Circuit noted in *Benison v. Ross*, 765 F.3d 649, 660 (6th Cir. 2014), "a reasonable individual might have been dissuaded from engaging in protected conduct by the threat of a lawsuit" holding them financially liable for a large sum. Similarly, "a person of ordinary firmness would be deterred from engaging in protected conduct, if as a result, a public official encouraged her

27

employer to terminate the person's contract or to have her change her behavior."
*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 726 (6th Cir. 2010). Both of these
things occurred in Mr. Seals' case as well: WCERS sent Mr. Seals a letter
threatening to sue him if he continued speaking, and a WCERS board member
threatened to end Mr. Seals' career. (Opinion and Order, RE 143, PageID.4337-4338
(testimony of witness Tom Yee regarding WCERS member Betty Misuraca's threat
to end Mr. Seals' career)). As the district court noted, the adverse actions here
included the events leading up to the actual suspension of Mr. Seals' pension once
he had worked 1000 hours:

> *But given the nuances of how Mr. Seals lost his pension eligibility,
> namely a determination in December of 2019 that he was not exempt
> under the [appointed]-officials exception to the thousand-hour rule, it
> is too simplistic to characterize the adverse action as just the pension
> suspension… Rather, the decision to revoke the [appointed]-officials
> exemption – the very mechanism through which the pension suspension
> ultimately occurred once Mr. Seals worked more than one thousand
> hours – must be included.* (Opinion and Order, RE 70, PageID.2922)

WCERS' claim that "there can be no adverse action when the action taken is
required by law" lacks merit. To state the obvious, there is no real equivalence
between the penological considerations underlying "legitimate prison regulations"
at issue in the cases it cites, and the pension suspension at issue here. And as
discussed fully below, the district court was correct to reject WCERS' contention
that its actions were required by law.

28

That all being said, the standard of review bears repeating: the district court's denial of WCERS' motion for summary judgment, and its findings that Mr. Seals was "unequivocally" subjected to an adverse action, are unappealable; even if they were appealable, the district court did not abuse its discretion; and even if it did, WCERS has not demonstrated prejudice. Again, looking to the totality of the circumstances, it cannot be said that WCERS had no notice or opportunity to present its arguments and evidence regarding the 'adverse action' element. Defendant made this argument repetitively in a motion to dismiss, a motion for summary judgment, and a motion for reconsideration. It fails to point to any other evidence that it could have presented had it been given yet another opportunity to try.

### c.  The District Court Rightfully Asked the Jury to Decide Causation

While Defendant-Appellant makes few specific arguments related to the causation element, it is worth taking this opportunity to note that the district court's decisions on this element were also correct. The district court found that issues of material fact existed on the 'causation' element and denied WCERS' motion for summary judgment, citing to the evidence produced by Mr. Seals of the board members' retaliatory motive and the temporal proximity between his protected conduct and the suspension of his pension. (Opinion and Order, RE 64, PageID.2668-2670; Opinion and Order, RE 70) These issues rightfully went to the jury. *Paige v. Coyner*, 614 F.3d 273, 282 (6th Cir. 2010) (a defendant's motivation

for taking action against the plaintiff is usually a matter best suited for the jury). That jury returned a verdict for Mr. Seals on causation.

One final point: Mr. Seals has acknowledged stating that the WCERS board members were "incompetent, but not necessarily out to get [him] and the other retirees." (Trial Transcript Vol. 2, RE 131, PageID.3961) Defendant-Appellant has argued repeatedly, incorrectly, and fruitlessly that this nullifies the causation piece of Mr. Seals' First Amendment cause of action. Its deliberate misinterpretation of Mr. Seals' statement has no bearing on any appealable issue. Mr. Seals was clear that when he made that statement, he was referring to Defendant's incompetence with regard to the pension calculations, not with regard to retaliating against him for his First Amendment protected speech. (Trial Transcript Vol. 2, RE 131,  PageID.3961-3962) It is not relevant to any ruling by the district court and should be disregarded.

**D. The District Court Was Correct Not to Rule as a Matter of Law that Mr. Seals' New Job was Subject to the 1000 Hour Rule.**

WCERS has had at least four opportunities to argue that its counsel's legal analysis as to Mr. Seals' exemption from the thousand-hour rule was correct. The district court rightfully rejected this analysis each and every time.

As WCERS acknowledges, "a court's review of an administrative agency's decision is limited to determining whether the decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected

30

by a substantial and material error of law." (Corrected Principal Brief of Defendant-Appellant, Document 31, Page 51) What WCERS fails to acknowledge is that the district court correctly applied this standard of review and found that WCERS' analysis was contrary to law, affected by a substantial and material error of law, and/or was arbitrary and capricious. Instead, WCERS claims that the district court committed reversible error by "ignoring and/or dismissively treating" the determination. But the district court did not ignore or dismiss the determination. It reviewed it thoroughly (several times) and identified both substantial and material errors of law and a capricious underlying motive. (Opinion and Order, RE 22, PageID.769-772; Opinion and Order, RE 64, PageID.2674-2681; Opinion and Order, RE 70, PageID.2920-2923)

The district court noted multiple fatal flaws in WCERS' analysis. First, at the motion to dismiss stage, after reviewing "considerable legal analysis", the district court rejected Defendant's argument that Mr. Seals' appointment to the deputy county clerk position was invalid because it was not "approved by a circuit judge." (Opinion and Order, RE 22, PageID.770-711) That argument was "affected by a substantial and material error of law" in that it failed to consider alternative legal theories for Plaintiff's appointment, including M.C.L. §45.41 and M.C.L. §50.131. The district court also noted that per Mr. Seals' job description, his duties could

reasonably be construed as a "delegation of a portion of the sovereign power" of the Clerk's office to a deputy. (Opinion and Order, RE 22, PageID.772)

Next, at the summary judgment stage, the district court applied the deferential "substantial evidence" standard under *Somberg v. Utica Cmty. Schs.*, 908 F.3d 162 (6th Cir. 2018) and *Dignan v. Michigan Pub. Sch. Employees Ret. Bd.*, 253 Mich. App. 571, 576 (2002). The court reviewed Drew Van de Grift's December 2019 memorandum on Mr. Seals' exemption from the thousand-hour rule, upon which WCERS relied when it voted to revoke the exemption and suspend his pension once he had worked 1000 hours, and concluded that it was not "substantial, competent, and material, such that WCERS' decision should remain undisturbed." (Opinion and Order, RE 64, PageID.2676) It then devoted the next five pages to an in-depth explanation of this finding. Specifically, it carefully analyzed the five-factor test to determine whether a position qualifies as an exempt "public official" espoused in *People v. Freedland*, 308 Mich. 449, 457 (1944). The five factors are:

> (1) [the position] must be created by the Constitution or Legislature or created by a municipality or other body through authority conferred by the Legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control or a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional.

32

(Opinion and Order, RE 64, PageID.2677) As to the first factor, the district court noted that WCERS' analysis entirely ignored statutory bases for the creation of Mr. Seals' position, specifically M.C.L. §45.41, which empowers the county clerk to "appoint a deputy or deputies who may perform all the official acts which the officer making such appointment might legally do." (Opinion and Order, RE 64, PageID.2679) As to the second factor, the district court found that WCERS' analysis "entirely misses the point" (Opinion and Order, RE 64, PageID.2679) because Mr. Seals' job description included tasks that the county clerk had delegated to him the "statutorily mandated functions commensurate with the Wayne County Clerk's responsibilities as the Fiduciary Agent for the Third Circuit Court." (Opinion and Order, RE 64, PageID.2679) As to the third, fourth, and fifth factors, Mr. Van de Grift made one "solitary argument" that again "misse[d] the mark." (Opinion and Order, RE 64, PageID.2680) He claimed that Mr. Seals' new position failed the last three factors because the position "was not created by state law." The district court noted that as to factor three, a county clerk's duties are appropriately defined by statute; as to factor four; a deputy county clerk would be a subordinate office to a county clerk; and that some permanency could be derived from Mr. Seals' deputy county clerk/financial officer position because "the need for some form of financial officer is implicit in the duties of a county clerk." (Opinion and Order, RE 64, PageID.2680)

At the motion for reconsideration stage, the district court also reviewed the additional opinion prepared by WCERS' outside counsel in February 2020, though it noted that WCERS could not have relied on this opinion in deciding to suspend Mr. Seals' pension in December 2019. (Opinion and Order, RE 70, PageID.2922) Despite finding WCERS' claim that it relied on outside counsel's advisory opinion in suspending Mr. Seals' pension to be "disingenuous", it still reviewed it and applied the *Somberg* standard. The outside counsel opinion echoed Mr. Van de Grift's without remarkable variation. (Opinion and Order, RE 70, PageID.2922) It was not "substantial, competent evidence" requiring blind deference.

The inquiry on appeal now is not whether WCERS can Monday-morning-quarterback its way into making additional arguments that could have, if made at the time, justified its foregone conclusion that Mr. Seals was not exempt from the 1000-hour rule. It is whether the district court committed a reversible error in finding that WCERS' original analysis – the analysis they relied on at the time of the adverse action – was not "substantial, competent, and material, such that WCERS' decision should remain undisturbed." The district court committed no such error.

### E. WCERS Does Not Have Standing to Dispute the District Court's Grant of Wayne County's Motion for Summary Judgment.

WCERS next argues that the district court erred when it granted former defendant Wayne County's motion for summary judgment. But WCERS does not have standing to make this argument on behalf of its former co-defendant. *See, e.g.,*

*Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp*., 824 F. App'x 360, 367 (6th Cir. 2020) (referencing consistent rulings that "a defendant may not appeal a co-defendant's dismissal"); *Mantin v. Broad. Music, Inc*., 248 F.2d 530, 531 (9th Cir. 1957) ("moving defendants, obviously, had no standing to seek dismissal of the action as to the nonmoving defendants"); *Aqua-Chem, Inc. v. Bariven, S.A*., No. 3:16-CV-553, 2017 WL 10379636, at *4 (E.D. Tenn. Aug. 17, 2017) (co-defendant lacked standing to assert claim on behalf of other defendant); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 114 (S.D.N.Y. 2010) ("Co-defendants do not have standing to assert improper service claims on behalf of other defendants"); *AmTote Int'l Inc. v. Kentucky Downs, LLC*, No. 1:15-CV-0047-GNS, 2017 WL 6329874, at *3 (W.D. Ky. Dec. 11, 2017) ("...a party lacks standing to compel a response to a codefendant's discovery request..."); *Iron Workers Loc. 25 Pension Fund v. Watson Wyatt & Co.*, No. 04-CV-40243, 2009 WL 3698562, at *1 (E.D. Mich. Nov. 4, 2009) (co-defendant lacked standing to challenge claims lodged against other defendant). This argument must be rejected.

If for some reason this Court does conclude that WCERS has standing, it must then consider that WCERS waived this argument by failing to preserve it for appeal. Now, it has neglected to provide even a single citation to the record in support of its argument that Wayne County's summary judgment motion was wrongly granted. This "perfunctory argument" is insufficient to preserve the issue for appeal. *Lawless*

*v. Muskingum Cnty., Ohio*, 36 F. App'x 192, 193 (6th Cir. 2002) (argument made in conclusory manner insufficient to preserve issue for appeal).

Finally, WCERS' attempt to lay the blame entirely on Wayne County must be rejected. WCERS claims it has been punished for relying on a faulty analysis by the County's counsel (though in every other section of its brief, it insists that the analysis was correct). Notably, WCERS also yet again completely ignores the evidence of WCERS' retaliatory motive that set the entire chain of events involving Corporation Counsel into motion. Instead, it yet again spins its own version of the story, this time generated with the hindsight of a jury verdict, but unsupported by any citation to the record. It has not demonstrated that, on the record available at the summary judgment stage, there was sufficient evidence for a jury to find causation as to Wayne County. There was much less evidence of retaliatory animus as to the County than as to WCERS, whose board members were angered by Mr. Seals' speech and voted to investigate the feasibility of using the thousand-hour rule to "keep him quiet."

### F. The District Court's Jury Instructions Were Correct.

WCERS next takes issue with the jury instructions given by the district court. Erroneous jury instructions are generally reviewed for abuse of discretion, but the Sixth Circuit reviews the "legal accuracy" of jury instructions de novo. *Hurt v. Com. Energy, Inc*., 973 F.3d 509, 523 (6th Cir. 2020), citing *United States v. Blanchard*, 618 F.3d 562, 571 (6th Cir. 2010). This court reviews jury instructions to determine

whether they fairly and adequately submitted the issues and applicable law to the jury, and a party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law. *Arban v. W. Pub. Corp.*, 345 F.3d 390, 404 (6th Cir. 2003) (citing *Jones v. Federated Fin. Reserve Corp.,* 144 F.3d 961, 966 (6th Cir.1998)). The court must presume that the jury followed the district court's instructions. *Weeks v. Angelone,* 528 U.S. 225, 234 (2000).

### a. Defendant Agreed to Jury Instruction 17 and Fails to Support its Argument that This Instruction was Deficient.

As to Jury Instruction 17, Defendant agreed to this jury instruction. (Opinion and Order, RE 143, PageID.4329-4330; Jury Instructions, RE 127, PageID.3724) It waived this argument by not objecting to the inclusion of the instruction at trial. *Virostek v. Liberty Twp. Police Dep't/Trustees*, 14 F. App'x 493, 509 (6th Cir. 2001) (party waived objection to inclusion of instruction on nominal damages under Fed. R. Civ. P. 51) WCERS provides no legal basis for now appealing the issuance of an instruction it agreed to and does not explain why it believes the district court should have issued its proposed instruction #27. WCERS has not met its burden to show that this alleged deficiency leads to the conclusion that the instructions, taken as a whole, were misleading or gave an inaccurate understanding of the law. A district court "does not abuse its discretion by giving relevant and legally correct jury instructions." *Stackpole Int'l Engineered Prod., Ltd. v. Angstrom Auto. Grp.*, LLC,

52 F.4th 274, 286 (6th Cir. 2022), citing *Nolan v. Memphis City Schs.*, 589 F.3d 257, 273 (6th Cir. 2009). WCERS offers no argument showing that Jury Instruction 17 was anything but relevant and correct. This unsupported argument must be rejected.

### b. The District Court's Jury Instructions on Causation Accurately Stated the Law of the Sixth Circuit.

The district court's instructions on causation were also relevant and legally correct. Defendant-Appellant's argument relies primarily on *Nieves v. Bartlett*, 126 S. Ct. 1715 (2019), but it ignores the fact that the Sixth Circuit has since issued additional decisions clarifying the impact of *Nieves* on the law of this circuit. Nieves acknowledged that establishing causation in some types of retaliation cases is "straightforward" where, as in public employment cases such as this one, the burden shifts "to the defendant to show he would have taken the challenged action even without the impermissible motive." In other types of retaliation cases – such as retaliatory arrest and prosecution cases, which Nieves dealt with – proving causation is more complex. Thus, even Nieves acknowledges the correct burden-shifting approach for this case.

In *Lemaster v. Lawrence Cnty., Kentucky*, 65 F.4th 302 (6th Cir. 2023), this Court took "the opportunity to clarify" the burden of proof as to causation in First Amendment free-speech retaliation cases in light of *Nieves*. Under Lemaster, "[w]hen public employees or contractors allege that the government has retaliated against them because of their speech, [courts must implement] the required but-for

test using a burden-shifting approach." *Id*. at 309. "A plaintiff must first show that speech was a substantial or motivating factor of a harmful action." *Id*. (internal citations and quotation marks omitted). This does not require a but-for test. Then, the burden shifts to the government defendant, which "must prove the *absence* of but-for causation." *Id*. (internal citations omitted) (emphasis in original). The defendant "can avoid liability by proving that they would have taken the same action even if the plaintiff had not spoken." *Lemaster* at 309 (internal citations omitted). The defendant bears a greater burden of proof at this stage.

In *Rudd v. City of Norton Shores*, No. 22-1229, 2023 WL 3886404, at *8 (6th Cir. June 8, 2023), this Court again confirmed the correct framework: "A plaintiff must initially show that protected activity was a "substantial or motivating factor" for the defendant's harmful action. If the plaintiff meets this initial burden, a defendant may then avoid liability by showing that it would have taken the same harmful act even if the plaintiff had not engaged in the protected speech. That is, the defendant "must prove the absence of but-for causation." The court properly issued a legally correct jury instruction that WCERS failed to do so in this case. It could not prove that it would have suspended Mr. Seals' pension even if he had never complained about the disputed calculations.

The district court did not abuse its discretion in giving the legally correct jury instruction pursuant to *Lemaster* and *Rudd*. But importantly, even if the district court

had given WCERS' proposed jury instruction on causation, the result would have been the same. Defendants' continued insistence that it had no retaliatory motive and, therefore, there could be no finding of causation, is utterly misplaced. Mr. Seals did produce evidence of retaliatory motive – evidence that was sufficient to survive both the motion to dismiss and the motion for summary judgment, and sufficient for the jury to find in Mr. Seals' favor. As to causation, Mr. Seals was required "to show that the plaintiff's protected activity at least partially motivated the government to take the adverse action." *Jocke v. City of Medina, Ohio*, No. 22-3954, 2023 WL 5167326, at \*7 (6th Cir. Aug. 11, 2023). Mr. Seals did so. Direct evidence of WCERS' retaliatory motive was given by witness Tom Yee during trial. Mr. Yee testified that WCERS voted to "investigate" the feasibility of using the County Pension Plan Act to "take Mr. Seals' money away" and "keep him quiet." The court "must give the winner of a jury verdict the benefit of the doubt on all factual debates presented to the jury." *Shohadaee v. Metro. Gov't of Nashville & Davidson Cnty.*, 150 F. App'x 402, 404 (6th Cir. 2005). Defendant-Appellant's attempt to use its argument about jury instructions to re-litigate its version of the facts is completely inappropriate. It is not for this Court to decide post-jury-verdict that Mr. Yee's testimony was false. That was for the jury to decide. The jury believed Mr. Yee. They found that Mr. Seals had been retaliated against because of his speech and rejected Defendant's explanation for its actions. That they found for Mr. Seals accordingly,

40

pursuant to jury instructions that correctly stated the law of this circuit. Defendant's chronic, futile insistence on its version of the truth, rejected by two different district court judges and a jury, does not permit a reversal of the verdict.

### c. The district court's rulings on jury instructions related to damages were within its discretion.

The court's decisions on jury instructions pertaining to damages were similarly relevant and legally correct. As to mitigation of damages, it would have been an error for the court to "instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue." *Jones v. Consol. Rail Corp.*, 800 F.2d 590, 592 (6th Cir. 1986). The defendant has the burden of establishing a failure to mitigate damages by showing that "substantially equivalent positions were available and that the plaintiff failed to exercise reasonable care and diligence in seeking those positions." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994). Defendant fails to support this burden with any evidence whatsoever. Defendant claims Mr. Seals could have "becom[e] the Chief Deputy Clerk or a contract consultant." But there was no evidence presented at trial that Mr. Seals could have done so. The district court was within its discretion not to give a mitigation instruction. (Opinion on Disputed Jury Instructions, RE 124, PageID.3697)

Likewise, Judge Cox acted within his discretion by not issuing an instruction on nominal damages. Sixth Circuit law is clear that nominal damages are appropriate

41

in cases where a plaintiff seeks to vindicate rights "whose deprivation has not caused actual, provable injury." *Ealy v. City of Dayton*, 103 F.3d 129 (6th Cir. 1996) (internal citation omitted). Here, the parties stipulated to the fact that Mr. Seals was earning $5415.00/month in pension payments and Mr. Seals testified that he was deprived of a total of $178,000.00 over 33 months. The uncontroverted evidence showed that Mr. Seals suffered clearly quantifiable damages. A nominal damages instruction would have been incorrect. The court did not abuse its discretion by declining to issue one.

## CONCLUSION

Plaintiff established evidence sufficient for the jury to find in his favor on each element of his First Amendment retaliation claim. The district court's findings were within its discretion and correctly decided, in particular its denial of WCERS' motion for summary judgment, which is not appealable after the jury verdict. Plaintiff requests an order affirming the findings of the district court, the jury verdict, and the judgment in his favor.

Respectfully submitted,

**NACHTLAW, P.C.**

/s/ David A. Nacht
David A. Nacht (P47034)
*Attorney for Plaintiff-Appellee*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
Tel:   (734) 663-7550

dnacht@nachtlaw.com

Dated: September 4, 2024

## **CERTIFICATE OF COMPLIANCE**

1.    This brief complies with the length limitations of Fed. R. App. P. 32(a)(7) as it contains 11,984 words, when excluding the sections of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32.

/s/ David A. Nacht
David A. Nacht (P47034)

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2024, a copy of this Brief was filed electronically.  All parties will receive notice of this filing via the Court's electronic filing system, and they may access this filing through the same system.

/s/ David A. Nacht
David A. Nacht (P47034)

**ADDENDUM**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

**Case No. 2:20-cv-11272**

| Record No. | Description | PageID |
|---|---|---|
| 13 | Defendant WCERS and Grden's Motion to Dismiss | |
| 22 | Opinion and Order (Denying Mtns. to Dismiss) | |
| 52 | WCERS and Grden's Motion for Summary Judgment | |
| 52-1 | Index | |
| 58 | Plaintiff's Brief in Opposition to Defendant's MSJ | 2280-2281 |
| 58-2 | Plaintiff Dwayne Seals' Deposition Transcript | 2326, 2328-2329, 2325 |
| 58-4 | Cathy Garrett's Deposition Transcript | 2370-2371 |
| 58-5 | Thomas Yee Deposition Transcript | 2376-2380, 2383 |
| 58-10 | Email from Young Blood to Seals, dated April 1, 2017 | 2421 |
| 58-13 | Plaintiff's September 30, 2019 Email | 2433 |
| 58-14 | October 1, 2019 Correspondence to Plaintiff | 2436-2438 |
| 58-15 | Minutes from September 30, 2019 WCERS Meeting | 2440 |
| 58-16 | October 31, 2019 Email from Plaintiff and Internal Response Between Defendants | 2442-2443 |
| 58-17 | Email thread from November 4, 2019 | 2445-2446 |

| 64 | Opinion and Order<br>(Denying WCERS's Mtn. for Summary Judgment;<br>Granting Wayne County's Mtn. for Summary<br>Judgment) | |
| 66 | Mtn. for Reconsideration (of RE 64) | |
| 70 | Opinion and Order (Denying RE 66) | |
| 124 | Memorandum and Opinion on Disputed Jury<br>Instructions | 3697 |
| 126 | Jury Verdict Form | |
| 127 | Jury Instructions | 3724 |
| 128 | Judgment-Jury Verdict | |
| 129 | Trial Transcript Vol. 1 | 3769, 3774-3776, 3780 |
| 130 | Trial Transcript Vol. 1 | 3890-3898 |
| 131 | Trial Trancript Vol. 2 | 3907, 3911-3915, 3949, 3961-3962,3968, |
| 132 | Trial Transcript Vol. 3 | 4086,4097, 4171 |
| 133 | WCER's Mtn. for JMOL/New Trial | |
| 134 | Trial Transcript Vol. 1 | 4217-4218, 4222-4223, 4231 |
| 143 | Opinion and Order (Denying RE 133) | |